## WEST ST. LOUIS SAVINGS BANK v. SHAWNEE COUNTY BANK.

The cashier of a bank is not, by reason of his official position, presumed to
have the power to bind it as an accommodation indorser on his individual
note ; and the payee who fails to prove that the cashier, as such, had authority
to make the indorsement cannot recover against the bank.

APPEAL from the Circuit Court of the United States for the
District of Kansas.

Parmelee, cashier of the Shawnee County Bank, made his
individual note for $3,000, payable to the order of the West
St. Louis Savings Bank, indorsed it " G. F. Parmelee, cashier,"
and gave as collateral security a certificate of stock in the
Shawnee County Bank, issued to and owned by him.   The
consideration of the note was money lent to him by the payee,
who was advised that he intended to use it to pay for his
stock in the Shawnee County Bank.   He failed to pay the
note ; whereupon this suit was commenced by the payee against
him as maker, and the Shawnee County Bank as indorser, of
the note.

The court passed a decree against Parmelee, but dismissed the bill so far as it asked relief against the Shawnee County Bank.

The complainant then brought the case here.

The remaining facts in the case are stated in the opinion of the court.

*Mr Henry Hitchcock* for the appellant.

No counsel appeared for the appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The testimony in this case satisfies us beyond all doubt that the liability of the Shawnee County Bank, if any liability exists, is that of an accommodation indorser or surety for Parmelee, its cashier, and that this was known to the St. Louis Bank when it made the discount. The note itself bears upon its face the most unmistakable evidence of this fact. It is made payable directly to the St. Louis Bank, and the Shawnee Bank appears only as an indorser in blank of a promissory note before indorsement by the payee and while the note is in the hands of the maker. Such an indorsement by a bank is, to say the least, unusual, and sufficient to put a discounting bank upon inquiry as to the authority for making it.

But we are not left in this case to inquiry or presumption. Both the correspondence and the testimony of the cashier of the St. Louis Bank show conclusively that this was the understanding of the parties. Parmelee, in transmitting the note for discount, wrote for himself, and not as cashier. He spoke of his own note, and authorized a draft upon himself personally for the interest. He pledged his own stock for the payment of the note. Wernse, the St. Louis cashier, says the negotiations opened with an application by Parmelee for a loan to enable him to pay for his stock in the Shawnee Bank, upon the pledge of the stock as collateral. There is not a single circumstance tending in any manner to prove that the transaction was looked upon as a rediscount for the Shawnee Bank, except the entries in the books of the St. Louis Bank, and these are far from sufficient to overcome the positive testimony as to what the agreement actually was.

This being the case, the question is directly presented as to the liability of the Shawnee County Bank upon such an indorsement. It is certain from the testimony that no indorsement of the kind was ever expressly authorized by the bank. None of the officers, except Parmelee, and Hayward, the vice-president, ever knew that it had been made until long after the last discount had been obtained. The books of the Shawnee Bank contained no evidence of such a transaction, and the accounts of the St. Louis Bank, as rendered, gave no indication of the actual character of the paper discounted.

Ordinarily, the cashier, being the ostensible executive officer of a bank, is presumed to have, in the absence of positive restrictions, all the power necessary for such an officer in the transaction of the legitimate business of banking. Thus, he is generally understood to have authority to indorse the commercial paper of his bank and bind the bank by the indorsement. So, too, in the absence of restrictions, if he has procured a *bona fide* rediscount of the paper of the bank, his acts will be binding, because of his implied power to transact such business; but certainly he is not presumed to have power, by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note. Such a transaction would not be within the scope of his general powers; and one who accepts an indorsement of that character, if a contest arises, must prove actual authority before he can recover. There are no presumptions in favor of such a delegation of power. The very form of the paper itself carries notice to a purchaser of a possible want of power to make the indorsement, and is sufficient to put him on his guard. If he fails to avail himself of the notice, and obtain the information which is thus suggested to him, it is his own fault, and, as against an innocent party, he must bear the loss.                                                   *Decree affirmed.*