MARTHA A. HIER, *as Administratrix, etc.*, v. JACOB
MILLER, *as Receiver, etc.*

**No. 13,408.**   (75 Pac. 77.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Payment of Personal Debts by Cash-
   ier.* The cashier of a bank organized under the laws of this state
   has no implied authority to pay his individual debt by entering
   the amount of it as a credit upon the pass-book of his creditor,
   who keeps an account with the bank, and permitting the creditor
   to exhaust such account by checks which are paid, the bank
   having received nothing of value in the transaction.

2. ——— *Bank May Recover from Creditor.* If the cashier of
   a bank, without actual authority so to do, undertakes to pay his
   individual debts in the manner stated, the bank may recover of
   his creditor the amount of money paid on checks drawn upon the
   faith of the unauthorized pass-book entries.

3. ——— *Notice Imputed to Creditor.* The fact that the cash-
   ier is personally interested in a transaction of the character de-
   scribed is sufficient to put his creditor upon inquiry as to the
   actual extent of the former's power.

Error from Doniphan district court; WILLIAM I.
STUART, judge. Opinion filed January 9, 1904. Af-
firmed.

*Johnson, Rusk & Stringfellow*, and *Ryan & Reeder*, for
plaintiff in error.

*A. L. Perry*, and *S. M. Brewster*, for defendant in er-
ror.

The opinion of the court was delivered by

BURCH, J.: Briefly summarized, the essential facts
of this controversy are as follows: The cashier of a
bank organized under the laws of this state was al-
lowed the sole charge and conduct of its affairs by its
board of directors. He was indebted individually to
a depositor of the bank, and on different occasions

Hier v. Miller.

pretended to make payments upon such indebtedness by giving the depositor credit upon her pass-book. Such credits were not shown upon any other memoranda of the bank's business and were not entered upon its books. The last transaction of this character occurred on November 30, 1900. A final settlement was then had between the depositor and the cashier, resulting in the surrender to him of his last unpaid note and an entry upon her pass-book as before. She then demanded her balance in the bank. The cashier balanced her pass-book, she drew a check for the amount shown by the pass-book to be due her, and he gave her therefor a cashier's draft upon a bank in St. Joseph, Mo., which was afterward duly paid and returned. No officer of the bank had actual knowledge of the true character of these transactions except the cashier. The depositor herself acted in good faith.

On January 16, 1901, the cashier died. The bank was then found to be insolvent, was immediately taken in charge by the bank commissioner, and in due time a receiver for it was appointed. Because the books of the bank did not disclose the personal transactions of the cashier with the depositor her account appeared to be overdrawn when the receiver assumed control. The amount of the overdraft following the affair of November 30, 1900, was somewhat reduced by deposits subsequently made by third parties to the depositor's credit, and the receiver sued for the balance appearing to be due when he took charge.

From the facts found the district court concluded that the cashier had no authority to pay his individual debts to the depositor by giving her credit in the bank and permitting her to draw checks upon it without its having received anything of value therefor; that

the entries of credit upon the depositor's pass-book were acts beyond the scope of the cashier's power ; and that, because nothing appeared upon the books of the bank to give notice of the facts, the bank was not bound. Judgment was rendered for the receiver, and the depositor asks for a review of these conclusions of law.

The defendant received no money in payment of her debtor's notes and made no deposit in the bank of anything derived from them. Her debtor made no deposit for her and procured no transfer of funds to her account as an equivalent. Therefore, the books of the bank spoke true, and any obligation of the bank to pay the defendant's checks arose from the entries upon her pass-book made by the bank's cashier. Those entries were made in payment of the cashier's private debt, and if of any effect at all amounted to an appropriation of the money of the bank to the discharge of his personal obligations. The cashier had a right to dispose of the funds of the bank for purposes contemplated by its charter. For this his office is a warrant of authority. But he could not absorb the funds of the bank in the satisfaction of his private debts without an express and especial authorization. The office of cashier does not import such power. Whether or not such authority actually did exist the defendant was bound to inquire. It has been well understood from of old that no man can serve two masters. He will hold either to one or to the other. For a like reason the cashier could not serve both himself and the bank in a single transaction, and because he was attempting such a perilous thing the defendant was put upon guard as to the extent of his power.

"It is against the general law of reason that an

agent should be entrusted with power to act for his principal and for himself at the same time." (*Bank of N. Y. N. B. Assn. v. A. D. & T. Co.*, 143 N. Y. 559, 564, 38 N. E. 713, 714.)

"It is not pretended that Collins had any express authority to apply the funds of the bank to the payment of his own note. He had no implied authority to do so. There are no presumptions in favor of such a delegation of power. He who assumes to rely upon the authority of an agent to bind his principal to the discharge of the agent's own obligation must prove actual authority if contest arises. No principle of the law of agency is better settled than that no person can act as the agent of another in making a contract for himself." (*Chrystie v. Foster*, 61 Fed. 551, 553, 9 C. C. A. 606.)

The case of *Williams v. Dorrier*, 135 Pa. St. 445, 19 Atl. 1024, is directly in point. The syllabus reads:

"The cashier of an unincorporated bank, himself a partner, being indebted individually on a note he had made to a depositor, wrote to the latter that he had placed to his credit $1000 as a payment on the note. A credit for this amount was placed to the depositor's account upon the books of the bank.

"Afterward the cashier wrote to the depositor that he had again placed $1000 to his credit, as a second payment, but no credit for this amount was placed to the account. The depositor checked out, from time to time, both amounts, when the receiver of the bank sued to recover the same from the depositor:

"1. In such case, the bank was estopped from setting up want of authority in the cashier, so far as related to the credit for the first $1000, but was not estopped by the act of the cashier as to the second $1000, though the cashier had placed them both upon the depositor's pass-book; and the bank could recover the latter as an overdraft."

The entry of credits in the defendant's pass-book in payment of the cashier's private debt is quite analo-

gous in principle to the payment of a bank officer's personal obligations by drafts drawn by him in favor of his creditor upon the funds of the bank. In such a case it is the duty of the recipient of the instruments to inquire of those who alone could confer it if the officer possessed the requisite power to execute them.

"Brokers who receive drafts drawn in their favor by the president of a bank upon its funds in settlement of his transactions upon the board of trade are bound to communicate that fact to the bank directors, and inquire as to his authority to execute the paper." (*Lamson v. Beard*, 45 L. R. A. 822, 94 Fed. 30, 36 C. C. A. 56.)

In the case just cited Judge Woods discussed the direction and scope of such an inquiry in the following manner :

"The inquiry, therefore, which these plaintiffs in error should have made was whether Cassatt had authority to draw drafts of the bank upon funds of the bank in possession of its correspondents for use in his individual transactions. Such an inquiry involved no difficulty beyond communicating to the directors of the bank, other than Cassatt, the fact that such a draft or drafts had been tendered in discharge of liabilities incurred in dealings upon the board of trade in Chicago, and asking whether the execution of the paper had been authorized. There can be little doubt what would have been the result of such an inquiry, accompanied with a frank and full statement of the facts as they were known to the payees of any of the drafts in suit at the time of execution. It would not have needed a discovery of Cassatt's fraudulent bookkeeping to enable the directors to say whether the execution of such paper had been theretofore authorized, or then had their approval. As contended, it was clearly no duty of the plaintiffs in error to undertake an examination of the books, which, once they commenced inquiry into the management of the bank, they would have learned had been wholly in the keep-

ing of Cassatt and of clerks who could not be expected to testify against him. Inquiry of Cassatt, too, it is to be presumed, would have been useless, and therefore, if made, would not have met the requirement of the law. The one thing necessary to be known was whether Cassatt had authority to make the proposed use of the bank's paper. The authority could have come only from the directors, by direct resolution or by acquiesence or implied assent, and the plain, unmistakable course was to push the inquiry, wherever begun, to the source of authority.''

The rule of law involved, that an agent may not represent himself and his principal in the same transaction, has been applied in many cases.

''Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation.'' (*Wilson v. M. E. R. Co.*, 120 N. Y. 145, 150, 24 N. E. 384, 385, 17 Am. St. Rep. 625.)

''Ordinarily, the cashier, being the ostensible executive officer of a bank, is presumed to have, in the absence of positive restrictions, all the power necessary for such an officer in the transaction of the legitimate business of banking. Thus, he is generally understood to have authority to indorse the commercial paper of his bank and bind the bank by the indorsement. So, too, in the absence of restrictions, if he has procured a *bona fide* rediscount of the paper of the bank, his acts will be binding, because of his implied power to transact such business; but certainly he is not presumed to have power, by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note. Such a transaction would not be within the scope of his general powers; and one who accepts an indorsement of that

character, if a contest arises, must prove actual authority before he can recover. There are no presumptions in favor of such a delegation of power." ( *West St. L. Sav. Bk. v. Shawnee etc. Bk.*, 95 U. S. 557, 559, 24 L. Ed. 490.)

"In the absence of special authority for such purpose, neither its president nor its cashier, nor these officers acting conjointly, had authority or right to appropriate and devote any part of the funds of the bank of which the plaintiff is receiver, to the payment of such president's personal debt due to the defendant. Such authority, ordinarily, was beyond the scope of the purpose and duties of such officers. No doubt the directors—the governing authority of the bank— might allow them to exercise such power, or they might ratify such transaction, but it must in some way sufficiently appear that they did." ( *Dowd v. Stephenson*, 105 N. C. 467, 470, 10 S. E. 1101.)

"One man ought not to be permitted to dispose of the property, or to bind the rights of another, unless the latter has authorized the act. In the case of a partner paying his own separate debt out of the partnership funds, it is manifest that it is a violation of his duty and of the right of his partners, unless they have assented to it. The act is an illegal conversion of the funds; and the separate creditor can have no better title to the funds than the partner himself had.

"Does it make any difference, that the separate creditor had no knowledge at the time, that there was a misappropriation of the partnership funds? We think not. If he had such knowledge, undoubtedly he would be guilty of gross fraud, not only in morals, but in law. That was expressly decided in *Sheriff v. Wilks*, 1 East, R. 48; and indeed seems too plain upon principle to admit of any serious doubt. But we do not think that such knowledge is an essential ingredient in such a case. The true question is, whether the title to the property has passed from the partnership to the separate creditor. If it has not, then the partnership may reassert their claim to it in the hands

of such creditor.'' (*Rogers v. Batchelor*, 12 Pet. 221, 229, 9 L. Ed. 1063, 1067.)

''A general authority to the president of a bank to certify checks drawn upon it does not extend to checks drawn by himself.

''The face of the check showing the president's attempt to use his official character for his private benefit, every one to whom it comes is put upon inquiry ; and when the certificate is false, no one can recover against the bank as a *bona fide* holder.'' (*Claflin v. Farmers' and Citizens' Bank*, 25 N. Y. 293.)

In the case of *Campbell v. Manufacturers' National Bank*, 67 N. J. L. 301, 51 Atl. 497, 91 Am. St. Rep. 438, the receiver of a bank brought an action to recover money obtained by the defendant upon a draft drawn upon the bank's funds by its cashier in payment of his individual debt. In sustaining a recovery, the court said :

''There is no reason, which is founded on principle, that can be given for not applying the same rule of agency to a cashier as to other persons occupying fiduciary relations. No person can act as an agent in a transaction in which he has an interest, or to which he is a party, on the side opposite to his principal. This must be so where the person dealing with the agent has knowledge of the facts.

''A person cannot deal with a cashier of a bank as an individual in securing a draft, and claim, after the draft is delivered, it has become the transaction of the bank. To make the acts of the cashier valid, the transaction in which the draft is delivered must be a bank transaction, made by the cashier, within his express or implied authority, in the conduct of the business of the bank. So long as a person deals with the cashier in a matter wherein, as between himself and the cashier, he is dealing with, or has a right to believe he is dealing with, the bank, the transaction is obligatory upon the bank.

''The cashier is presumed to have all the authority

he exercises in dealing with executive functions legally within the powers of the bank itself, or which are usually or customarily done, or held out to be done, by such an officer.

"But the test of the transaction is whether it is with the bank and its business, or with the cashier personally and in his business. (*Claflin v. Farmers' Bank*, 25 N. Y. 293 ; *Moores v. Citizens' National Bank*, 111 U. S. 156, 4 Sup. Ct. 345, 28 L. Ed. 385.)

"As to the former, all presumptions are in favor of its regularity and binding force. In the latter, no such presumption arises ; in fact, upon proof that it was known to the claimant to be an individual transaction, and not one for the bank, the burthen is cast upon the claimant to establish, by proof, that the act of the cashier thus done, for his own individual benefit, was authorized or ratified.

"These are fundamental principles applicable to principal and agent in every transaction arising out of that relation."

In *Williams v. Barnett*, 10 Kan. 455, 460, it was said :

"True, each member of a partnership has the *jus disponendi* in reference to all the partnership property ; but that right is subordinate to the obligation to make all dispositions for the benefit of the partnership. He may not pledge the partnership credit, or use the partnership assets, for the satisfaction of his individual indebtedness without the consent of his partners. That is a use foreign to the purposes of a partnership. Neither can he in any way dispose of the property so as to deprive the partnership of the benefit of it."

By way of paraphrase it may be observed that the cashier of a bank may not pledge the credit of the corporation or use the corporate assets for the satisfaction of his individual indebtedness, without the consent of the board of directors. That is a use foreign to the charter purposes of the corporation ; and because such conduct falls outside the scope of a cash-

ier's lawful authority any one dealing with him privately must do so at his peril.

The case of *G. N. Bank v. State*, 141 N. Y. 379, 36 N. E. 316, cited by counsel for defendant, is not opposed to these views, for in that case the cashier "had the right to draw a draft on the corresponding bank of the claimant for himself upon the same terms that he had to draw a draft for a stranger." (See *Campbell v. Manufacturers' National Bank*, supra, and *Bank of N. Y. N. B. Assn. v. A. D. & T. Co.*, supra.)

It is said that the act of the cashier in entering up deposits on the defendant's pass-book was an assurance from him that if he was using the bank's funds he was acting within his authority. The reply is that because he was paying his own debt his assurance was merely that of himself as an individual for his own ends, and not that of the bank through him as its agent, for its benefit.

It is said that when a bank places an officer at the window where he transacts its business with the public it in effect tells the world that he is trustworthy and reliable and that he will act within the scope of his authority. It does nothing of the kind. Such a declaration would protect a recipient in the enjoyment of a Christmas gift of the entire body of corporate assets. By placing an officer at the window to do its business a bank publishes to the world that he is there to do its business and not his business ; that he has no power or authority to do any act outside the legitimate prosecution of the corporate enterprise, and that it will not be bound by any perversion of the corporate funds to his personal use.

"The cashier is the executive of the financial department of the bank, and whatever is to be done, either to receive or pass away the funds of the bank

for banking purposes, is done by him or under his direction ; he therefore directs and represents the bank in the reception and emission of money for banking objects. (*United States v. Bank*, 21 How. 356, 16 L. Ed. 130 ; *Merchants' Bank v. State Bank*, 10 Wall. 604, 19 L. Ed. 1008 ; *Com. Bank v. Norton*, 1 Hill, 501.) But neither the president nor the cashier can impose by his own action, on the bank, any liability not already imposed by law or usage.'' (*Asher v. Sutton*, 31 Kan. 286, 289, 1 Pac. 535, 537.)

In an effort to avoid the effect of these conclusions and to establish ratification or estoppel on the part of the bank, the defendant strives to magnify the importance of many minor details of her relations with the bank and its cashier, in which the voluminous findings of fact abound. It may be doubted if the act of the cashier was capable of ratification by the board of directors because it was not within the power of the board to grant him such authority in the first instance.

''May the officers of a corporation make a contract binding on the company by which its property is diverted from the use and benefit of the corporation and applied to the payment of the individual debt of its president? It is a fundamental principle that the officers and directors of a corporation are trustees for its stockholders. (*Sargent v. K. M. Rld. Co.*, 48 Kan. 672, 29 Pac. 1063.) This fiduciary relation forbids the doing of any act by them by which the corporate assets are applied to any use except such as may serve the purpose of the corporation. It is as much beyond the power of the officers or directors of a corporation to pledge its property to secure the personal debt of its president as it is to use it in pledge for the payment of the obligation of a total stranger.'' (*Cattle Co. v. Loan Co.*, 65 Kan. 359, 361, 69 Pac. 332.)

'' 'A corporate officer who performs the duties of his position is not, in the absence of agreement with the corporation, entitled to any compensation therefor.'

"Nor can the directors, after the services have been performed, pay for such services, unless per contract theretofore made.  The reason is that the board cannot give away the money of the stockholders.  They can be liberal or charitable with their own private funds, but, as agents, cannot be liberal with money of their principals.  'A subsequent vote of the board to pay a director for his services, when there was no previous agreement, is not binding.'

"If the directors have no power to bind the corporation by a direct vote, granting pay for past services in any capacity to one of their number who agreed to serve without compensation, *a fortiori*, the corporation is not concluded by a presumed ratification through a supposed knowledge and acquiescence on the part of such directors.  What cannot be done directly through lack of power is never accomplished indirectly by silence, acquiescence, and ratification." (*National Bank v. Drake*, 29 Kan. 311, 317, 321, 44 Am. Rep. 646.)

But conceding the transaction to be one which the board of directors could have authorized, a careful consideration of the findings of fact discloses no substantial ground for denying the right of the receiver to recover the money of the bank which the defendant obtained.  To state fully the reasons for this conclusion would require a discussion of the facts far beyond the proper limits of a written opinion.  It may be said in passing, however, that the defendant stands upon precarious ground in invoking the rule of equitable estoppel against the representative of the bank. When the cashier made an entry in the defendant's pass-book of the receipt of money by the bank she knew the recital was false for she had delivered to the bank nothing of value at all; she knew that something more must be done before she could rightfully demand the payments of her checks; she knew very

well that the money was yet to be supplied, and that unless funds actually were furnished there was nothing which she could have any right to withdraw. No obligation rested upon the bank or upon any of its officials, as such, to deposit or to transfer funds to the credit of her account. She was required to do that herself or to see that it was done. If she depended upon her debtor to act for her it was incumbent upon her to see that he did whatever was required. It did not devolve upon the bank to see that her debtor discharged any duty to her, and when he failed to supply her account with necessary funds the bank was not bound to make good his default. She had no right to ask the bank to return to her money which she never deposited and which it never in fact received from any source ; and when it paid her checks without any money belonging to her in its possession to meet them, it was entitled to be reimbursed.

Other propositions presented by counsel need not be discussed at length. None of them is sufficiently grave to require a reversal of the judgment of the district court. It is, therefore, affirmed.

All the Justices concurring.