# CHARLESTON.

FIRST NATIONAL BANK OF WELCH V. CLARK NATIONAL BANK.

Submitted· October 11, 1916.   Decided October 24, 1916.

1. BANKS AND BANKING—*Representation by Officers—Authority of Cashier.*

   In the absence of special authority, a cashier can not obligate his bank for a loan made to him individually.   (p. 108).

2. SAME—*Representation by Officers—Acts of Cashier.*

   A check for the proceeds of a note, made by ·a stranger and in- · dorsed, as an individual, by one who is the .cashier of a bank, and discounted for his personal accommodation, although drawn to his order as cashier, is not proof that his bank· received such proceeds, when it is shown by the bank's books and his own admissions that the funds were placed to his individual account and used by him.   (p. 108). .

3. SAME—*Representation by Officers—Constructive Notice.*

   A copy of a letter written by the cashier of one bank to the cashier of another, attempting to obligate the bank of the former for a loan previously made to him, by the latter, for his own use, and filed with the bank's correspondence, is not constructive notice to the directors of its contents.   (p. 109).

Error to Circuit Court, McDowell County.

Action by the First National Bank of Welch against the Clark National Bank.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.

*Alfred G. Fox, Sanders & Crockett* and *Lawson Worrell,* -for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff, First National Bank of Welch, by this writ of error seeks reversal of a judgment for defendant, · Clark National Bank, dismissing plaintiff's action upon defendant's demurrer to its evidence.

The action was upon a negotiable note dated March 29, 1915, for· $1,500.00, made by the Flatrock Coal Company, in-

corporated, payable at the First National Bank of Welch sixty days after date, to the order of T. L. Earnest and M. F. Beamer, and indorsed by them. It is the last of a series of renewal notes for the same amount, all made and indorsed in the same manner, the original of which bore date March 30, 1914. Neither the original note nor any of the renewals were indorsed by the defendant bank, but the contention of plaintiff is that it is liable, nevertheless, because of the representations and undertakings made and entered into by its cashier at the time the note was discounted, which induced the loan, and because the bank received the money. At the time the note was discounted T. L. Earnest was a stockholder and secretary-treasurer of the Flatrock Coal Company, the maker of the note. The note was payable to Earnest and Beamer, as individuals, and indorsed by them in that capacity, and the former applied to B. O. Swope, cashier of the plaintiff bank, for the loan on his own account, as he swears, and this statement is not denied. He received the assistant cashier's check for $1,470.00 which was the amount of the note, less the discount, and which was made payable to his order, as cashier. He indorsed it in his official capacity and forwarded it to the Drovers & Mechanics National Bank of Baltimore, Maryland, the reserve agent of defendant bank, for collection, on its account, and deposited the funds in his own bank to his own credit. On the next day he wrote B. O. Swope, cashier of plaintiff bank, the following letter:

"Referring to our conversation of yesterday and the note of Flatrock Coal Company, Inc., for $1,500.00, which you discounted for us, beg to say that you may consider us responsible for this item. We will also be glad to handle anything for you with the same understanding."

There is nothing on the face of the note to show that defendant bank was in anyway connected with it, nothing on it to indicate that Earnest had negotiated the loan for his bank, or that he had attempted to obligate it for its payment. The proof is conclusive that defendant bank never received one dollar of the proceeds. Mr. Earnest so stated, and Mr. Swope, plaintiff's principal witness, examined the bank's books, and admitted they showed that the proceeds went to the individual

credit of Earnest. That the check was indorsed by him, in his official capacity, to the bank in Baltimore and defendant bank got credit for it on its account with that bank, does not prove that it received any of the proceeds. It would have been credited in the same manner with any other commercial paper that might have passed through its hands for collection, Defendant bank is, therefore, not liable on the alleged ground that it was the beneficiary of the loan.

There is very little conflict in the testimony of the two cashiers, the most material witnesses for the respective banks. Earnest says he informed Swope he wanted the note discounted on his own account, and Swope does not deny it, but insists the understanding between them was, that defendant bank was to take care of the note. Earnest admits he wrote the letter to Swope, assuming to obligate his bank, but he also admits he was not authorized to do so, and there is no attempt to prove that he had such authority. Swope admits the renewals were all taken at the request of the Flatrock Coal Company, maker of the note. After the last renewal note became due, some negotiations were had between some of the officers of the respective banks, with a view to a friendly adjustment of the matter, but without success, and it was agreed that plaintiff should make written demand upon defendant for payment in order that the question of the latter's liability might be presented to and determined by its board of directors. B. O. Swope did then write a letter to J. H. Bane, who was then cashier of defendant bank, demanding payment, and enclosing a copy of Earnest's letter to Swope written the day after the note was discounted. Thereupon defendant wrote the bonding company, surety on Earnest's bond, seeking to hold it responsible for the debt, as if it had been a misappropriation by him of the bank's funds. But the bonding company denied liability, and any further effort to induce it to pay the note seems to have been abandoned. But all of this was done pursuant to an agreement between the officers of the respective banks for the purpose of assisting the plaintiff bank in collecting the note, and does not affect the question of defendant's liability. If it was not liable from the inception of the transaction, there is no evidence that it

has done anything since to create liability. Defendant's officers were not certain of the legal effect of the cashier's act, and studiously avoided saying or doing anything that could be interpreted as a ratification of his act, and, on December 15, 1915, wrote plaintiff bank denying liability and refusing to pay the note. Mr. Clark, president of the defendant bank, says it was about eight months after Earnest had been out of its employ before he knew anything about the discounting of the note by the plaintiff bank, when its cashier B. O. Swope came to see him concerning the matter and said he did not expect the Clark National Bank to pay the note, but wanted it to help the First National Bank collect it, and that it was then agreed between them that Swope should write his bank a letter, demanding payment of the note, and it would then write the bonding company, surety on Earnest's bond, and enclose a copy of the letter and try to get it to pay the note, and that, pursuant to that agreement, such letters were written. Clark's testimoney stands uncontradicted.

Defendant's liability depends wholly upon the legal effect of its cashier's attempt to obligate it, in the manner outlined, for payment of money borrowed by him for himself. Earnest admits he was not specially authorized thus to bind it, and such authority is certainly not within the scope of his general powers as cashier. It is no part of a bank's business to indorse notes or guarantee their payment, merely for the individual accommodation of its officers or of third parties. Although special authority may be conferred upon a bank officer, by its directors, to borrow money for its own use, none was given in this case, and no such implied power is inherent in the office of cashier. In *State National Bank of St. Joseph, Mo.,* v. *Newton National Bank,* 66 Fed. Rep. 691, it was held not to be within the scope of the ordinary duties of a cashier to bind his bank by an agreement to discharge obligations, which he had himself contracted for the accommodation of a third party. The same principle was announced by the Supreme Court of the United States, in *West St. Louis Savings Bank* v. *Shawnee County Bank,* 95 U. S. 557. Even conceding that Swope may have thought he was discounting the note for the defendant bank, a concession not warranted by the

evidence, still the business of borrowing money on a bank's account is so far beyond the usual scope of the cashier's duties as to require special authority therefor, and the person or bank making the loan is bound to take notice of the cashier's authority in that respect. *Western National Bank* v. *Armstrong,* 152 U. S. 347. There has been no ratification by the directors, either express or implied, of Earnest's act. Knowledge is essential to the ratification of an act, and, although Earnest does admit that a press copy of his letter to Swope was on file with the bank's correspondence, the directors are not affected with constructive notice of it. Their duties did not require them to examine the daily correspondence of the cashier to see what he had written. It was the cashier's duty to bring to their attention important letters involving the bank's liability, and not their duty to search the letter files to ascertain if there were such letters.

That the check was made payable to Earnest's order in his official capacity only proves that C. B. Early, the assistant cashier who drew and signed it, may have thought the loan was being made to the bank instead of to Earnest individually, and does not affect the case. His belief that such was the fact could not make it so.

There is no evidence on which the jury could have been justified in finding in favor of plaintiff, and the judgment is affirmed.

*Affirmed.*