FIRST NAT. BANK OF SWEETWATER, TEX., v. RUST et al.

(Circuit Court of Appeals, Fifth Circuit.   March 15, 1919.   Rehearing Denied May 9, 1919.)

No. 3300.

1. BANKS AND BANKING ⬅117—CERTIFICATE OF DEPOSIT—ISSUANCE FOR INDIVIDUAL DEBT—RISK OF AUTHORITY.

One to whom a bank's president, in payment of his individual debt, issued its certificate of deposit, accepted with knowledge thereof, took the risk of the president's authority, depending on whether there had been a contemporaneous deposit, as recited in the certificate; the principle that his general powers would give apparent authority not applying, where he is known to be acting in his own interest.

2. BANKS AND BANKING ⬅118—CERTIFICATE OF DEPOSIT—ISSUANCE FOR INDIVIDUAL DEBT—AUTHORITY—BURDEN OF PROOF.

One to whom a bank's president issued its certificate of deposit in payment of his individual debt, accepted with knowledge thereof, seeking to hold the bank thereon, has the burden of proving the making of the recited contemporaneous deposit, necessary for the authority to issue certificate.

3. BANKS AND BANKING ⬅118—CERTIFICATE OF DEPOSIT—EVIDENCE OF DEPOSIT.

A bank's certificate of deposit having been issued by its president in payment of his individual debt, and accepted with knowledge thereof, neither recital in certificate nor statement in letter of president to person receiving the certificate is evidence against bank of deposit having been made, necessary for president's authority to issue certificate.

4. EVIDENCE ⬅244(12)—STATEMENT OF BANK PRESIDENT—PAST TRANSACTION.

Statement of president of bank, to one to whom its certificate of deposit had been issued by its prior president in payment of his individual debt, that its books showed the deposit called for thereby, is not inadmissible against it, in the absence of injury therefrom raising an estoppel; it amounting to an admission that past transactions had occurred and had been evidenced by the bank's books.

Batts, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Texas; Robert T. Ervin, Judge.

Action by Anna Rust and husband against the First National Bank of Sweetwater, Tex.   Judgment for plaintiffs, and defendant brings error.   Reversed and remanded.

J. H. Beall, of Sweetwater, Tex. (Beall & Douthit, of Sweetwater, Tex., and Kirby & King, of Abilene, Tex., on the brief), for plaintiff in error.

R. W. Haynie, of Abilene, Tex. (Woodruff & Woodruff, of Sweetwater, Tex., and Fred Cockrell, of Abilene, Tex., on the brief), for defendants in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The defendant in error Anna Rust brought suit in the District Court on three certificates of deposit, each for $2,000, purporting to have been issued by the plaintiff in error. The certificates were issued July 5, 1915, and were to mature 11 months after date, with 6 per cent. interest. At their maturity the interest was paid, and the certificates were extended for one year from their maturity. Upon presentation for payment, the plaintiff in error denied liability and refused payment, and this suit on them was instituted.

[1] The evidence developed that J. V. W. Holmes was president of the issuing bank at the time it is charged that the certificates were issued by it; that he owed the defendant in error certain land notes, and, being desirous of disposing of the land by which the notes were secured, induced the defendant in error by letter to accept in part payment of the notes, which were not then due, certificates of deposit of the plaintiff in error maturing at the same time the notes matured. The evidence shows that the husband of the defendant in error acted for her in the transaction with Holmes; that he was familiar with Holmes' handwriting, and knew that the certificates sued on were issued in settlement of an individual debt due by Holmes to his wife, and knew that the certificates were signed by Holmes, as president of the plaintiff in error, and that he had no knowledge of the deposit in the bank of the money, called for by the certificates, other than the recital of that fact in the certificates themselves, and in a letter from Holmes to him. The record, therefore, showed indisputably that the defendants in error received the certificates of deposit, knowing that they had been signed and issued by Holmes, and that he had used them in payment of his individual debt, and not in the business of the bank, for which he assumed to act.

The defendants in error, this being true, took the risk, in accepting the certificates, of the authority of Holmes to sign them in its behalf. It is not disputed that it was within his power as president to sign certificates of deposit, when the money was deposited in the bank, as called for by the certificate. He had no actual authority to issue certificates, in the absence of a contemporaneous deposit of the money. His general powers would give him apparent authority, as to persons dealing with the bank, to act for the bank, in the issue of certificates of deposit, in all cases, whether the money was deposited or not. The principle, however, is confined to cases where he was not known to be acting in his own interest, and not in the interest of the bank. If the party dealing with him knew that he

was acting in his own interest in the matter of the issuance of the certificates, and not in the business of the bank, then the party dealing with him was charged with knowledge of his want of authority, if he had none, and of his failure to deposit the money, as recited, if he so failed. If Holmes issued the certificates sued on, without making a corresponding deposit in the bank, and if the defendants in error knew that he used the certificates, when issued by him, for his own advantage, as distinguished from that of the bank, then they were charged with knowledge of his want of authority to bind the bank by the issuance of the certificates, and could not recover on them.

[2] The record showing without conflict that the defendants in error did know that Holmes, in issuing the certificates, was acting for his own advantage, to pay his individual debt with them, the only question left for decision is whether there was money deposited by Holmes in the bank to cover the issue of the certificates. If none was deposited in fact, the defendants in error were charged with knowledge of that fact, and, from it, with Holmes' want of authority to bind the bank. Ohio Valley Banking & Trust Co. v. Citizens' National Bank, 173 Ky. 640, 191 S. W. 433, 438; American Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977; Hier v. Miller, 68 Kan. 258, 75 Pac. 77, 63 L. R. A. 952; Claflin v. Farmers' & Citizens' Bank, 25 N. Y. 293; Campbell v. Manufacturers' National Bank, 67 N. J. Law, 301, 51 Atl. 497, 91 Am. St. Rep. 438; Amarillo National Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858; Bank v. American D. & T. Co., 143 N. Y. 559, 38 N. E. 713. The case was tried upon this theory, and the only question submitted to the jury was whether or not the money was, in fact, deposited in the bank, as recited in the certificates, and, on this question, the court below placed the burden upon the defendant bank. We think the District Judge misplaced the burden of proof in this respect. The party who deals with an agent, knowing him to be acting in his own interest, takes the risk of his having authority to so act for his principal, and assumes the burden of establishing his authority when he seeks to hold the principal. The case of Hier v. Miller, 68 Kan. 258, 75 Pac. 77, 63 L. R. A. 952, correctly states the rule, as we understand it to be. In that case the court said:

"The rule of law involved, that an agent may not represent himself and his principal in the same transaction, has been applied in many cases. 'Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation in payment of or as security for a personal debt of such officer does so at his own peril. Prima facie the act is unlawful and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation.' Wilson v. M. E. R. Co., 120 N. Y. 145, 150, 24 N. E. 384, 385, 17 Am. St. Rep. 625. 'Ordinarily, the cashier, being the ostensible executive officer of a bank, is presumed to have, in the absence of positive restrictions, all the power necessary for such an officer in the transaction of the legitimate business of banking * * * But certainly he is not presumed to have power by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note. Such a transaction would not be within the scope of his general powers, and one who accepts an indorsement of that character, if a contest arises, must prove actual authority before he

can recover. There are no presumptions in favor of such a delegation of power.' West St. L. Sav. Bk. v. Shawnee, etc., Bank, 95 U. S. 557, 559, 24 L. Ed. 490. * * * 'But the test of the transaction is whether it is with the bank and its business, or with the cashier personally and in his business. Claflin v. Farmers' Bank, 25 N. Y. 293; Moores v. Citizens' National Bank, 111 U. S. 156 [4 Sup. Ct. 345, 28 L. Ed. 385]. As to the former, all presumptions are in favor of its regularity and binding force. In the latter no such presumption arises. In fact, upon proof that it was known to the claimant to be an individual transaction, and not one for the bank, the burthen is cast upon the claimant to establish by proof that the act of the cashier thus done for his own individual benefit was authorized or ratified. These are fundamental principles applicable to principal and agent in every transaction arising out of that relation.' "

See, also, Harwood v. Ft. Worth National Bank (Tex. Civ. App.) 205 S. W. 484–488.

[3, 4] The question, then, arises whether the record presents any evidence from which the jury might have legitimately inferred that the deposit had been made as recited. If the transaction had not been an individual one of Holmes, the president, the recital in the certificates would have been prima facie evidence of the receipt of the money by the bank. In view of its having been issued by the president in his individual transaction and accepted by the defendants in error with that knowledge, it has no such effect. The letter of Holmes asserting the deposit, written in his own interest to defendants in error, has no greater effect. The only other evidence relied upon is the declaration of McAdams, who was the successor of Holmes as president of the bank, made to William Rust, defendant in error, and while he was president, to the effect that the bank had received the money called for by the certificates. McAdams claims that he made the declaration through mistake, and afterwards corrected it. If McAdams' declaration was an admission of, and as such binding on, the bank, the question of its correctness was for the jury to decide.

We think, however, that the declarations of McAdams, made many months after the transaction between defendants in error and Holmes, of which he had no personal knowledge, were binding upon the bank only as a reply to the demand of the defendant in error William Rust, and not as an admission as to the bank's receipt of the money from Holmes when he signed the certificates of deposit. Even the president of a bank is without authority to bind his principal by statements merely narrative of past transactions. McAdams' denial of receipt of the money and of liability could be proven as the predicate for the instituting of a suit to recover from the bank. If the defendants in error had been prejudiced by his admission of the receipt of the money by the bank, by having acted or delayed action because of it, the bank would be estopped to dispute its correctness. As no injury resulted, the defendants in error could only offer the statements as admissions of the bank, through its president, as to a past transaction. The president was without authority to bind the bank by such statements, as admissions. In the case of Packet Co. v. Clough, 20 Wall. 528, 540 (22 L. Ed. 406), the Supreme Court said of the authority of the declarations of the master, made two days after the occurrence of the transaction to which they related:

"Declarations of an agent are doubtless, in some cases, admissible against his principal, but only so far as he had authority to make them, and authority to make them is not necessarily to be inferred from power given to do certain acts. A captain of a passenger steamer is empowered to receive passengers on board, but it is not necessary to this power that he be authorized to admit that either his principal, or any servant of his principal, has been guilty of negligence in receiving passengers. There is no necessary connection between the admission and the act. It is not needful the captain should have such power to enable him to conduct the business intrusted to him, to wit, the reception of passengers, and hence his possession of the power to make such admissions affecting his principals is not to be inferred from his employment. It is true that whatever the agent does in the lawful prosecution of the business intrusted to him is the act of the principal, and the rule is well stated by Mr. Justice Story, that 'where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting part of the res gestæ.' A close attention to this rule, which is of universal acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done or how he had done it, and his declaration is no part of the 'res gestæ.' "

In the case of Goetz v. Bank of Kansas City, 119 U. S. 551, 560, 7 Sup. Ct. 318, 323 (30 L. Ed. 515) the Supreme Court said of similar declarations of a bank president:

"The testimony of one of the plaintiffs and of one of his attorneys was offered as to declarations of the president of the bank, made several days after the last draft had been discounted, to the effect that the bank had become largely involved in certain wool transactions with Du Bois as early as July or August, 1881, and would have broken off its relations with him if it had not been that this wool matter remained unsettled. The testimony was excluded, and rightly so. The declarations had no bearing upon the good faith of the officers of the bank in the transactions in this case; and, if they had, being made some days after those transactions, they were not admissible as part of the res gestæ any more than if made by a stranger. Evidence of declarations of an agent as to past transactions of his principal are inadmissible, as mere hearsay. Luby v. Hudson River Railroad, 17 N. Y. 131, 133; Adams v. Hannibal & St. Joseph Railroad, 74 Mo. 553 [41 Am. Rep. 333]."

The declarations of McAdams were incompetent, within the rule laid down in the cases quoted from. His statement that the books of the bank showed that the certificates sued on were issued was an admission that past transactions had occurred, and had been evidenced by entries on the bank's books. Little efficacy would be left to the rule against a principal being bound by statements of its agents as to past transactions, if such statements could be made binding on the principal by being so made as to disclose that they were based on the agent's inspection of books not shown to have been lost or destroyed. A result would be that an agent of a principal whose transactions are evidenced by books could bind the principal by admissions as to past transactions by merely putting his admissions in the form of statements of the contents of his principal's books. The books of account of the bank were introduced in evidence in the District Court. The record fails to disclose that the books were in-

257 F.—3

complete. The register of certificates of deposit did not show the issue of the certificates sued upon. It would seem that the bank's book of account should show conclusively, by the balances, whether the bank ever received the money, which should have been deposited, when the certificates were issued.

Counsel for the plaintiff in error asserted in argument that they do show the money was not received. Counsel for defendants in error stated that they were unable to determine what the books showed as to the receipt of the money. We conclude that there was no legal evidence offered by the defendants in error to support the burden resting upon them to show the deposit of the money called for by the certificates, and this results in the reversal of the judgment, and the remanding of the case for further proceedings conformable to this opinion; and it is so ordered, the costs to be taxed against the defendants in error.

BATTS, Circuit Judge (dissenting). Anna and William Rust sued First National Bank of Sweetwater, Tex., on three certificates of deposit of $2,000 each, issued in the name of the bank by its president, J. V. W. Holmes, July 5, 1915, to mature 11 months after date, with 6 per cent. interest. Interest was paid June 5, 1916, and the certificates extended, by verbal agreement, for one year. Upon the presentation of the certificates for payment, the bank denied liability. Holmes owed plaintiff certain land notes. He wanted to dispose of the land by which the notes were secured, and Rust, to accommodate him, accepted as part payment of the notes, which were not then due, certificates of deposit, payable at the date of the maturity of the notes. The transaction was by correspondence, and a letter from Holmes stated that the deposit for which the certificates were issued had been made.

The bank denies liability upon the certificates, upon the ground that the debt which was discharged was the individual debt of Holmes. The legal proposition is made that a note or other obligation of a bank, given in discharge of a personal debt of the official, in the absence of express authority from the directors, is void. The general principle is well enough established and upon entirely satisfactory grounds. When the creditor of a bank official receives the obligation of the bank in discharge of such debt, he has notice that the credit of the bank is being used for an illegal and an improper purpose. He will know that the officer is acting outside of his general authority. The creditor cannot safely accept the obligation without knowledge of the actual authority of the officer. Even if he should ascertain that the directors have undertaken to authorize the giving of the bank's notes for an individual debt, a question would arise as to whether such authority could be conferred.

The present case presents a situation somewhat different. The certificates of deposit in suit are not negotiable instruments. The liability which such a certificate imports is not created by the instrument itself, but exists as the result or effect of facts which the certificate evidences. The certificate is a receipt for money, but is not conclusive evidence that the deposit has been made. There may

be a denial of the fact of the deposit and evidence to support the denial. If the deposit has not in fact been made, the bank is not liable, notwithstanding a certificate has been issued. The certificate is evidence, but not conclusive evidence, of facts which place liability upon the bank. The certificate does not itself create a liability. The execution of a promissory note may result in a liability, without reference to whether it is based upon a consideration. A certificate of deposit creates nothing, but merely establishes, or prima facie establishes, a fact which may be the basis of a liability.

The question in this case is whether or not a deposit was made for the plaintiff. If it was the bank is liable. If it was not, the bank (under the issues made) is not liable. Holmes, at the time he issued the certificates of deposit, was the president of the bank. In the course of business of the bank, he had a right to speak for it. He had authority to accept deposits and issue certificates of deposit. He exercised this authority. He made a statement in writing to the effect that the deposit had been made. He was authorized to make such statement for the bank. If it was not true, the bank (no issue of estoppel being presented) would not be liable, notwithstanding his statement.

A certificate of deposit, issued in the course of business by a person who was the chief officer of the bank, and who had specific authority to receive money for the bank and issue statements that it had been received, ought to carry the prima facie presumption that the deposit which it recites had been made. The tender to plaintiff of the bank's note would have given notice that Holmes was undertaking to do that which was beyond his authority as bank president. His statement that money had been deposited to the credit of plaintiff was a statement made in the course of business that he had done something which he had a right to do, and the doing of which would place liability on the bank.

Nor would the transaction necessarily be one for his own benefit. By securing deposits and issuing certificates, he was carrying out the policy of the bank. Plaintiff had been given the option of being paid in cash or having the money deposited in the bank. It would have been advantageous to the bank that the deposit be made. She had made deposits before and received certificates from Holmes, and she accepted these certificates without knowledge of anything wrong, and without reason to make any character of inquiry, and without any knowledge, or notice, or intimation that she was doing anything that would be advantageous to Holmes, or other than advantageous to the bank. The bank held out the president as a person worthy of confidence. Plaintiff cannot be charged with any character of fault in assuming that the deposit which he said was made, was in fact made. The president had a right to make such a deposit. He had general authority to issue certificates of deposit. Plaintiff had a right to assume that he had properly exercised his authority.

The certificate on its face was regular. It was issued in the name of the bank, by the president of the bank, who had authority to issue. It imported a consideration, and prima facie evidenced a debt

of the bank. The burden was properly placed on defendant to prove its invalidity.

At the time payment of the certificates of deposit was requested, Holmes was no longer connected with the bank, having prior thereto become a defaulter. Ascertaining that fact, Mr. Rust asked Mr. McAdams, then president, whether the bank books showed the deposit. The latter went into the vault, examined the books, returned, and stated that the books showed the deposit. There is no controversy about this. Mr. Rust testifies that McAdams also stated that the books showed three certificates, of $2,000 each, and promised that they would be paid at maturity on June 5th. McAdams denied these statements, and further testified that he subsequently ascertained that he was mistaken as to the records showing deposits of $6,000 by Mrs. Rust, explaining that he had been misled by entries on the deposit register offered in evidence, which showed four certificates issued to Mrs. Rust, aggregating $1,000, and one immediately under these for $5,000, without either ditto marks or name. He testified that this $5,000 certificate was in fact issued to the Kansas City Life Insurance Company.

The verdict of the jury involved a finding that the deposit had been made. If there was any evidence to that effect, the verdict should be sustained. It is insisted that the statement of McAdams was made by an agent of the bank, long after the transaction, and that the corporation would not, on that account, be bound. The transaction between plaintiff and Holmes was not the subject-matter of the statement by McAdams. His statement had exclusive reference to what was shown by the records of the bank as to the business of the bank. If the bank's books showed that the deposit was made, that fact could be established to show the fact of the deposit. McAdams was president of the bank, in actual control of its affairs. He was in charge of and helped to make its records. In the course of the business of the bank, in response to the question of a customer of the bank with regard to pending bank business, he made a statement of what was shown by the books of the bank. It was not a recital of a past transaction, but a statement of an existing status. It was his duty, under the circumstances, to make the examination and state the facts disclosed. It may be that that which he said was not conclusive, either as to what the books showed, or as to the fact which the books evidenced. It may be that the bank is not estopped from showing that the president was mistaken as to what the bank books showed. It may be that the admissions are not conclusively binding.

Certain bank books were introduced which contained nothing to sustain the statement which Rust says the president made to him. It is entirely possible that the president did, in the first instance, make a mistake. It is entirely possible that the part of the record which he pointed out was that which misled him. It is also possible that there were other records, which he examined at the time, which sustained the statement that Rust said he made at the time. If the books showed what Rust says McAdams told him, they evidenced the deposit which is the basis of the suit. The admission as to the contents

of the books was made in the course of the business of the bank, by the person properly conducting that business, and within the line and scope of his duties as an officer. The matter was before the jury; they were entirely within their province in determining whether they would accept the admission which they had a right to find he had made when first asked about the liability of the bank, or accept the statement which he subsequently made, supported by such bank books as were produced.

It may be that no deposit was ever made in the bank for the benefit of the plaintiff; but a jury was justified in concluding that the books showed the deposit, and that such a deposit had been made. Two presidents of the bank made statements to that effect. In the selection of high officers of the bank, the directors make a peculiar appeal to the public to rely upon their integrity. The relations which result are of the most confidential character. The entire business of the country is based upon the belief of the general public that confident reliance may be placed in the honesty of such officials. If the bank is to be sustained on this appeal, one of its customers is to be deprived of more than $6,000, because she was willing to rely upon the honesty of a bank president, held out by the bank to be worthy of confidence, and accepted the word of his successor, held out by the bank as worthy of confidence.

The jury were authorized to find that the persons selected by the First National Bank of Sweetwater, Tex., to represent it in its financial affairs, did not defraud the plaintiff, but that the deposits for which she holds the bank's certificates were in fact made.

The judgment ought to be affirmed.