WENZLAFF, Respondent, v. TRIPP STATE BANK et al, Appellants.

(208 N. W. 222.)

(File No. 5644.   Opinion filed April 5, 1926.)

1. **Banks and Banking.**

   Property conveyed by stockholder to bank to improve its assets is conveyed for consideration and becomes asset of bank.

2. **Banks and Banking.**

   Banks are subject to public regulation to the end that they may freely contract debts with depositors.

3. **Banks and Banking—Consideration—That Conveyance of Property to Bank by Principal Stockholder Enabled Latter to Keep Bank Open Was Consideration for Conveyance, and Property Conveyed Became Property of Bank.**

   That conveyance of property to bank by principal stockholder enabled latter to keep bank open was consideration for conveyance, and property conveyed became property of bank, whether or not an actual credit for the deed passed from the bank to such stockholder.

4.  Banks and Banking—Acknowledgments—Deed by a Bank to Its
    President, Executed Without Consideration and Authority of
    directors, and in Violation of Statute Pertaining to Signing
    and Acknowledging, Held Void (Rev. Code 1919, Secs. 5250,
    8965).

        Deed by a bank to its president as individual, executed by
    him in his official capacity without consideration and authority
    and ratification by directors, signed by secretary instead of
    cashier, and acknowledged by stockholder and director of bank,
    held void, under Rev. Code 1919, Secs. 5250, 8965.

5.  Mortgages—Knowledge—Innocent Purchasers.

        Relative of bank president acquiring mortgage on bank with-
    out consideration, from one who, with his prior transferrors,
    had knowledge of facts invalidating mortgage, held not innocent
    purchaser for value without notice, within Rev. Code 1919,
    Sec. 1763.

6.  Mortgages—Cancellation of Instruments—Appeal and Error.

        Refusal to grant prayer of defendant bank as mortgagor to
    cancel mortgage sought to be foreclosed held error under the
    evidence.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Banks
and banking, Key-No. 43, 7 C. J. Sec. 224 (Anno.); (2) Banks and
banking, Key-No. 3, 7 C. J. Secs. 10, 10 (Anno.); (3) Banks and
banking, Key-No. 43, 7 C. J. Sec. 224 (Anno.); (4) Banks and bank-
ing, Key-No. 95, 7 C. J. Sec. 157 (Anno.), Acknowledgments, 1
C. J. Sec. 113; (5) Mortgages, Key-No. 257, 27 Cyc. 1323; (6) Mort-
gages, Key-No. 86(3), 27 Cyc. 1132.

Appeal from Circuit Court, Hutchinson County; Hon. R. B.
Tripp, Judge.

Suit by Sallie Edith Wenzlaff against the Tripp State Bank
and another. From a judgment for plaintiff and an order denying
a new trial, defendants appeal. Reversed, with directions.

*Hitchcock & Sickel,* of Mitchell, for Appellants.
*French, Orvis & French,* of Yankton, for Respondent.

MISER, Circuit Judge. Plaintiff brought this action against
the Tripp State Bank, now in process of liquidation, to foreclose
a mortgage upon the bank building. From a judgment of fore-
closure in favor of the plaintiff and from an order denying de
fendant's motion for a new trial, defendant appeals

Plaintiff is the wife of Solomon Wenzlaff. He is the father
of Waldermar Wenzlaff, who was the president and managing

officer of the Tripp State Bank until it closed on May 24, 1922. Waldemar during all the times mentioned in this opinion was the owner of 270 out of the 400 shares of stock in the bank, and at the time of the execution of the mortgage in question was the owner of 310 shares. Some of the balance of the stock was also owned by relatives in the bank's employ.

In furtherance of a plan of putting up a new bank building Waldemar purchased three lots in the city of Tripp in August, 1918, taking title in his own name. The purchase price was $12,000. Whether this money was Waldemar's money or the bank's money is not clear. In the spring of 1920, while the title was still in his name, the bank began the construction of a new bank building on a part of these lots, and at that time an account called the new bank building account was opened upon the records of the bank. Out of this there was paid up to December 19, 1920, an aggregate sum exceeding $20,000. Plaintiff claims that certain of the deposits or credits to this account were made by Waldemar, and the books show numerous book additions to the assets of the bank by Waldemar; but a careful scrutiny of the accounts discloses that on several occasions when Waldemar added to the book assets of the bank he left it worse off than before.

On July 29, 1920, Waldemar conveyed that portion of the three lots actually occupied by the building to the defendant bank. The consideration named therein was $7,500. Respondent contends that no consideration passed. Appellant introduced evidence tending to show that Waldemar received credit from the bank in that sum. However, this transfer was made at the direction of the then superintendent of banks, Waldemar being told that he must transfer the bank property to the bank until such time as certain bad notes could be taken care of, otherwise the superintendent would close the bank.

On March 10, 1921, the Tripp State Bank, without any resolution of the board of directors, without any satisfactory evidence to show that the bank's condition was any better off than it was when the premises were deeded to it in the July previous, executed a warranty deed of the bank premises to Waldemar Wenzlaff. This deed was signed by Waldemar himself as president. It was countersigned by Raebel, not as cashier, but as secretary. It was

acknowledged before Lee S. Kepled, who was the attorney for, a stockholder in, and a director of, the bank at that time.

On March 9, 1921, apparently in anticipation of the execution of the foregoing deed, Waldemar and his wife executed a mortgage on said premises in the sum of $10,000 to Western Surety Company, the proceeds of which mortgage went into the bank, but approximately half of that sum was used to take up cash items, the nature of which is not disclosed. On July 1, 1921, Wenzlaff and wife executed the mortgage in suit for $17,500 on the bank building. This mortgage was made payable to the defendant bank. It is admitted that the bank paid nothing to Waldemar for this mortgage. and it is equally admitted that Waldemar paid nothing to the bank for the execution of the deed from the bank to Waldemar the previous March. On July 12, 1921, this mortgage was assigned by the Tripp State Bank by Waldemar as president to Solomon Wenzlaff. On July 25, 1921, Waldemar and wife executed a warranty deed of the bank premises back to the bank. This deed was subject to two mortgages of $10,000 and $17,500. On the same date, at a special meeting of the board of directors of the bank, a resolution was adopted as follows:

"That whereas an examination of the assets of the Tripp State Bank disclosed that the record title to various tracts of land and city property now stands in the name of said bank or has been deeded to it this day, and are a part of its assets, it is hereby ordered that under no circumstances shall any of said land or city property be conveyed or encumbered without the specific direction of the department of banking and finance at Pierre, South Dakota."

On January 4, 1922, Salomon assigned the mortgage in suit to his wife, the plaintiff, without any consideration. The acknowledgment to same was taken by Waldemar as notary public and recorded on April 19, 1922. On May 24, 1922, the bank closed.

At the time when on July 12, 1921, the Tripp State Bank assigned this mortgage to Salomon Wenzlaff, Waldemar Wenzlaff had assumed the responsibility of raising a 100 per cent. stockholders' assessment, which had been levied by the bank under orders from the banking department. The mortgage was executed

by Waldemar to the bank for convenience in assigning to whoever would purchase the same. The assignment of the mortgage was consideration for the actual transfer from Salomon to Waldemar of one note of $7,000, and as security for three notes due to Salomon from Waldemar, the aggregate of .the notes thereby either secured or transferred exceeding $17,500, but the difference was to be taken care of by Waldemar to pay the 100 per cent. assessment. But the bank received no direct consideration whatever from the assignment to Salomon, who was aware of Waldemar's reasons for its assignment. Respondent admits that the bank received nothing from the assignment of this mortgage and received nothing from the execution of the deed in March, but contends that at all times Waldemar was the owner of the bank building.

[1] Whether, if it were possible to unravel the hopeless entanglement of Waldemar's personal affairs with those of the bank, such unraveling would disclose that Waldemar had a sum, large or small, invested in the bank building, we are not compelled to decide, because when on July 29, 1920, Waldemar deeded the bank building to the bank in order to avoid closing the bank, whatever may have theretofore been the ownership of that bank building, it thereupon became part of the assets of the corporation.

"Property conveyed to the bank to improve its assets, is conveyed for a consideration; such a consideration is a contribution and the property so conveyed becomes an asset of the corporation." Union Bank v. Sullivan, 108 N. E. 558, 214 N. Y. 332; Broderick v. Brown (C. C.) 69 F. 497.

[2] Banks are subject to public regulation to the end that they may freely contract debts with depositors. To sanction any arrangement whereby the real assets and securities of banks are to be regarded as less than the apparent assets and securities would tend to defeat the entire purpose of the regulatory statutes. Cedar State Bank v. Olson, 226 P. 997, 116 Kan. 320. This court held in Conley v. Seligman, 197 N. W. 293, 47 S. D. 239, that a note given by a stockholder of a farmers' elevator company which was in financial distress, pursuant to an agreement among the stockholders, was supported by a sufficient consideration, citing Union Bank v. Sullivan, supra.

[3]   So that, independently of whether there was a credit of $7,500 passing to Waldemar Wenzlaff when he executed a deed of the bank premises to the bank, the fact that he as the principal stockholder of the bank was thereby enabled to keep the bank open was a sufficient consideration for the deed.   The cases already cited are themselves full of citations which support the principle. Under date of July 17, 1920, only 12 days before Waldemar executed the deed to the bank, the superintendent of banks calls his attention to the fact that even without a deed to the banking house he is carrying the banking house at an amount in excess of the legal limit.   The overwhelming weight of the evidence shows that when on July 29, 1920, Waldemar deeded to the bank the bank premises, his deed was an absolute deed of property of which the bank was then the owner and carried on the books as bank property.

[4]   Thereafter on March 10, 1921, Waldemar, as president of the bank which owned this land, attempts to deed to himself, admittedly without consideration, without the slightest change in the real estate assets of the bank—although by a species of book-keeping legerdemain the form of the account was changed—which attempted transfer is not only in violation of common honesty and legitimate banking, but the deed is not signed by the cashier of the bank, as required by section 8965, R. C. 1919, and was acknowledged in violation of section 5250, R. C. 1919, and the conveyance was made by an officer to himself without authorization or ratification.   Vallely v. Devaney (N. D.) 194 N. W. 903; Shaw v. Crandan State Bank, 129 N. W. 794, 145 Wis. 639; Galloway v. Hamilton, 32 N. W. 636, 68 Wis. 651; Allen v. Brown, 50 P. 505, 6 Kan. App. 704; 1 C. J. 806-808; 7 C. J. 541.

[5]   With such a title to the premises, Waldemar Wenzlaff executed the mortgage in suit which ultimately, and without consideration passing from her, comes into the hands of his step-mother, the plaintiff, having successively been delivered to himself, as president of the mortgagee, to his brother as agent of his father, and to his father, with full knowledge of himself, his brother, and his father of the facts.

Under the facts the plaintiff was not an innocent purchaser of this mortgage for value and without notice.   Section 1763,

R. C. 1919; Grebe v. Swords, 149 N. W. 126, 28 N. D. 330; John Schweyer & Co. v. Mellon, 162 N. W. 1006, 196 Mich. 590; Jones v. Titus, 175 N. W. 257, 208 Mich. 392; 8 C. J. 983, 984; Redin v. Braham, 45 N. W. 445, 45 Minn. 283; Hier v. Miller, 75 P. 77, 68 Kan. 258, 63 L. R. A. 952; First National Bank of Sweetwater v. Rust, 257 F. 29, 168 C. C. A. 241; Wilson v. Metropolitan El. R. Co., 24 N. E. 384, 120 N. Y. 145, 17 Am. St. Rep. 625.

[6] Judgment should be reversed and appellants' prayer for judgment of cancellation of the mortgage granted.

MISER, Circuit Judge, sitting in place of SHERWOOD, J.