BURTON, Receiver, *v.* BURLEY, Receiver.

(*Circuit Court, N. D. Illinois.* January, 1880.)

NATIONAL BANK—TRANSACTIONS—ESTOPPEL—AUTHORITY OF PRESIDENT.

Where the president of a national bank instructed its correspondent bank to charge up against the bank of which he was president the amount of a note given by him, in payment of such note, and an account was rendered showing the transaction, the bank was estopped from denying the correctness of the charge in an action by a receiver, subsequently appointed, seeking to set aside the transaction.

*I. Holmes* and *Losey & Bunn,* for complainant.

*Monroe & Ball,* for defendant.

DRUMMOND, C. J. At the time the transactions which are the subject of controversy in this case took place, the City National Bank of Chicago was the correspondent of the First National Bank of La Crosse, and a large amount of business was done between the two banks, amounting often to the sum of $100,000 per month. Generally the Chicago bank had a large balance in its hands to the credit of the La Crosse bank; and it was the custom of the Chicago bank to transmit regularly copies of the accounts between the two banks, showing the debits and credits, and these accounts were in all cases acknowledged by the La Crosse bank; and if there was any error or mistake it was pointed out. During the time this business was transacted, the La Crosse bank was in the habit of drawing checks and directing payment out of the funds in the hands of the Chicago bank; and everything concerning the matters in controversy in the case was done substantially in the same way as in other business matters between the banks; and not only was no objection made to the disputed charges, but they were admitted by the La Crosse bank, and everything that was done between the two banks was on the

basis that the disputed charges were at the time acknowledged by the La Crosse bank.

Sutor was formerly connected with the City National Bank of Chicago. He went to La Crosse and became the cashier of the First National Bank of that place, and remained in that position some time; and the result was that he obtained the control of that bank and subsequently became president. There may have been some circumstances which enabled the president of the City National Bank, who held that position up to January, 1874, to know that Mr. Sutor was not a man of very large means, and that he would not have resources enough of his own to obtain control of that bank; but admitting that to be so, the question is whether there were facts known to authorize the officers of the bank here to conclude that at the time these various transactions took place, which are the subject of controversy, there was a fraud practiced upon the bank of La Crosse by Mr. Sutor. Fraud is not to be presumed. It must be proved. It is sufficient, of course, if it is proved by circumstances, which are sometimes the most satisfactory evidence to establish fraud.

Mr. Sutor owed the bank here for a loan that had been made. He had executed his note for the amount, ($7,000,) and when he became president of the bank at La Crosse he gave instructions to the bank here to charge the sum of $2,000 to the La Crosse bank, and it was done; and he stated at the same time that he gave these instructions that the balance of the amount which he personally owed, which, I take it for granted, referred to the note for $7,000 which he had given, would soon be paid, and accordingly instructions were subsequently given to charge to the La Crosse bank the $5,000 which was still due upon the note, and it was so charged. Besides this, which constitutes the main controversy in the case, it seems that a transaction took place between Mr. Sutor and Mr. Miner, the cashier of the City Bank, by which the former purchased of the latter some real estate in Chicago or its vicinity, upon which Mr. Miner owed a balance evidenced by note, and this note Mr. Sutor had agreed to pay. That accordingly was taken up when it became due by Mr. Sutor in the same way, namely, by instructions to charge the amount to the La Crosse National Bank. If that were all there was in these transactions, it might be contended with some plausibility on the part of the plaintiff that it was not liable for the charges that were made by the City National Bank. But that is not all. Accounts were made out from time to time and transmitted to the La Crosse National Bank, in which were included the charges which are the subject of

controversy, and made against the La Crosse bank by the City National Bank, and entered as payment *pro tanto* on the amount due from the Chicago bank to the La Crosse bank for deposits made, by the latter from time to time. The receipt of these accounts was acknowledged by the La Crosse bank as they were forwarded, and it was then stated that the accounts conformed to the books of the La Crosse bank, although it turned out that, in fact, they did not so conform, which fact, however, was unknown to the Chicago bank. One of the notes, it seems, was transmitted to Mr. Sutor—the note which he was to pay for Miner. There is no evidence what became of the other note, but the facts prove the existence of the note given by Sutor to the bank here, and its payment in the way stated, viz., in consequence of instructions from the president of the La Crosse bank.

In relation to the checks given in Chicago by Mr. Sutor as president of the bank, it is true that the general business of an officer of a national bank is to be transacted at its regular place of business. At the same time we know that, in the course of business between banks, occasionally officers of banks do give orders and instructions away from the place of business of the bank. And if they are within the general scope and authority conferred upon the officers, they may be binding upon the bank. But all accounts of this kind were included in those transmitted to the La Crosse National Bank. What security can there be in the business relations between banks if accounts of this kind are not considered conclusive and binding upon the respective banks, unless, indeed, there is a mistake, or it can be shown that there has been a fraud practiced upon the bank against which the charges are made, and that fraud known to the other bank or its officers? Unless that can be done, there would be no safety in the transactions of banks with each other. One bank would never know what to do on instructions given, or a charge made. Here is an "individual" account which one bank has against a particular person. Another bank with which it is transacting business, and with which it has an account, instructs that bank to charge this individual indebtedness to it. The charge is made and the account rendered showing it is done, and the bank which makes the charge knows nothing of any wrong being done, or of any mistake, or of any fraud being practiced by the officers of the bank. That being so, it must foreclose the bank, or else banks must cease doing business with each other. And it ought to be so. Where a bank, established under an act of congress, or any other way, elects its own offi-

cers, the men who are interested in the bank—the stockholders, the depositors—ought to be bound by the authorized acts of the officers, or those which appear to be authorized, whether they are or not, and by the general mercantile usage of banks. So that, in any view that I can take of this case, it seems to me that the plaintiff cannot maintain its action; that it must be concluded by the course of the business which has been done. *Non constat* but that, admitting all that is claimed on the part of the plaintiff, Mr. Sutor may have presumptively made some arrangement justifying his action with his own bank. The natural presumption that would arise in the minds of the officers of the city bank was that Mr. Sutor had made some transactions with the La Crosse bank by which he was authorized to act, and by which the La Crosse bank had assumed the individual debt which Sutor owed to the City National Bank. If the defendant insists, the court must certify to the balance due from the La Crosse bank to the city bank, because I hold that these items of account which are the subject of controversy constitute a valid charge against the La Crosse National Bank.

This is a controversy between the creditors of two insolvent banks, and I think the loss occasioned by the wrong of the officers of the La Crosse bank should fall on the creditors of that bank, rather than on those of the Chicago bank.