THE GREENWOOD COUNTY BANK, *Appellee,* v. THE O. B. WALKER TELEPHONE COMPANY (A. F. Eby, Garnishee, and F. H. Perkins, Interpleader, *Appellants,* and J. A. Middlekauff, Interpleader, *Appellee*).

No. 17,344.

THE WESTERN ELECTRIC. COMPANY, *Appellant,* v. THE O. B. WALKER TELEPHONE COMPANY (A. F. Eby et al., Garnishees, and F. H. Perkins et al., Interpleaders, *Appellees*).

No. 17,845.

THE NORTH ELECTRIC COMPANY, *Appellant,* v. THE O. B. WALKER TELEPHONE COMPANY (A. F. Eby et al., Garnishees, and F. H. Perkins et al., Interpleaders, *Appellees*).

No. 17,846.

SYLLABUS BY THE COURT.

1. MORTGAGE—*By Corporation—Private Debt of President—Invalid.* Upon issues between the plaintiff and an intervenor claiming a fund garnished in the action, the validity of a mortgage under which the intervenor claimed the fund was assailed. Upon a review of the evidence it is held sufficient to sustain findings that the mortgage was given by the defendant telephone company to secure a debt of its president, and not a debt of the company; that it was taken with knowledge of these facts, and is not a valid obligation of the company.

2. GARNISHMENT—*Trial Before Judgment against Principal Defendant.* Issues between the plaintiff, a garnishee, and intervening claimants of a fund, were made up and tried and a judgment was rendered thereon, and at the same time judgment was rendered against the principal defendant which was in default. It is held that any error in trying these issues before judgment was entered against the principal defendant was waived by proceeding to such trial without objection or request for delay.

3. SUMMONS—*Absence from Files—Recitals of Judgment.* The absence of a summons from the files after a judgment is rendered and the fact that the appearance docket does not contain an entry of the return thereon do not render a judgment void which recites that the defendant "had been duly and legally served with summons by personal service upon the president, O. B. Walker," and that the company is in default.

4. MORTGAGE—*Debt Secured Partly Invalid—Not Void in toto.* A chattel mortgage was given by the telephone company to secure a valid debt of the company, and also the individual debt of its president. It is held that the mortgage is not void *in toto* as matter of law, but is void if the mortgagee intended in so taking the mortgage with such excess of indebtedness included in its terms, to defraud, hinder or delay other creditors of the company. The evidence upon this question of fact is examined, and it is held that a finding that the mortgage was invalid is not sustained by the evidence.

5. GARNISHMENT—*Intervenors—Distribution of Funds.* After a garnishment summons has been served in an action by a creditor of the principal defendant, and an answer had been filed by the garnishee, he paid over the fund to another person who claimed it, and who had been impleaded in the action. Other garnishee summonses were then served upon the same garnishee in actions by other creditors of the principal defendant. The garnishee answered in these later actions, stating that he had paid the fund over to such claimant. Thereupon the claimant was also garnisheed. Issues were made and tried between the several plaintiffs, the garnishee, the claimant, and another intervenor who claimed the fund under the mortgage referred to in the fourth paragraph above, the principal defendant being in default. It is held that the claimant of the fund (who is the intervenor mentioned in the first paragraph) should be held as such garnishee, the fund brought into court, and applied according to the priorities stated in the opinion.

Appeals from Elk district court. Opinion filed December 7, 1912. Modified.

*J. F. Benest,* of Severy, and *A. F. Sims,* of Howard, for the Greenwood County Bank.

*J. A. McHenry,* of Howard, *A. M. Jackson,* and *A. L. Noble,* both of Winfield, for A. F. Eby and F. H. Perkins.

*A. T. Ayres,* of Howard, for J. A. Middlekauff.

*A. F. Sims,* of Howard, for The Western Electric Company and The North Electric Company.

The opinion of the court was delivered by

BENSON, J.: These actions were commenced by creditors of the telephone company against that company and A. F. Eby, as garnishee. The plaintiffs will be referred to in this opinion as the bank, the Western company and the North company, respectively. All the actions are upon promissory notes made by the telephone company. The indebtedness to the bank accrued in April, 1907; to the Western company in February, 1908, and to the North company on May 29, 1908.

The action of the bank was commenced July 27, 1909. The garnishee answered on August 20, stating that he had sold property of the telephone company to J. A. Middlekauff, under a chattel mortgage given by that company to him to secure a debt of over $10,000, and that $2711.88 remained in his hands, the balance of the proceeds of the sale after satisfying the mortgage, which amount was claimed by F. H. Perkins under a second chattel mortgage. This amount in the hands of the garnishee will be referred to as the fund. The validity of the Eby mortgage is not questioned.

Perkins and Middlekauff filed interpleas, each claiming the fund. Perkins claimed it under a chattel mortgage dated and recorded March 11, 1908, given to secure a promissory note purporting to be made by the telephone company for $2000 held by him as endorsee of F. L. De Pew, payee. Middlekauff claimed the fund under a chattel mortgage dated September 3, 1908, given to secure notes made on March 7, 1908, in consideration of an indebtedness accruing earlier. The answer of the bank to the Perkins interplea alleged that the note and mortgage pleaded by Perkins were given in consideration of money loaned to O. B. Walker personally to purchase stock in that company for

Walker, and that the company received no considera-
tion therefor, although Walker, as president, issued
the note and mortgage in its name to Perkins, who
took the note with knowledge of these facts, De Pew
being only a nominal payee.  In answer to the Middle-
kauff interplea, the bank alleged that the notes secured
by the Middlekauff mortgage were executed for the
benefit of Walker personally, without consideration to
the telephone company.  The Western and the North
companies made the same objections to the claims of
the intervenors as the bank.

Two substantial controversies are presented:  (1)
Is the Perkins mortgage a valid obligation of the tele-
phone company prior in right to the Middlekauff mort-
gage and the claims of the several plaintiffs as cred-
itors?  (2) Is the Middlekauff mortgage a valid obli-
gation prior in right to the claims of the plaintiffs?

The evidence tends to prove the following facts:
Sometime before any of the transactions already re-
ferred to, Walker and Middlekauff became the owners
of a telephone plant, as partners at first, but a corpora-
tion was formed under the name of the O. B. Walker
Telephone Company, in which each owned half of the
capital stock.  Middlekauff then loaned to the corpora-
tion $3600 to buy another telephone plant, which was
accordingly purchased and merged with that already
owned by the company.  The note of the corporation—
the telephone company—was given for this loan.  The
amount due on this note on March 7, 1908, was a little
over $2900.  At that date fifteen other notes for $500
each were issued by the telephone company to Middle-
kauff, in renewal of the balance due upon the $3600
note and in payment for his stock, which was there-
upon transferred by him to O. B. Walker.  Middle-
kauff, learning of the Perkins mortgage, obtained the
chattel mortgage before referred to, purporting to be
made by the telephone company, signed by O. B.

Walker, president, to secure these fifteen notes. This mortgage was made and placed on file September 3, 1908. At that time he knew that the telephone company owed other debts and that Walker was insolvent. Early in March, 1908, O. B. Walker and C. A. Ewing were the owners of the capital stock of the telephone company, except one share held by F. L. De Pew. Ewing became dissatisfied and desired to retire from the business. De Pew, as the friend of Walker and Ewing, undertook to obtain $2000, the amount agreed upon between Walker and Ewing for that interest, and solicited Perkins for a loan with which to make the payment. After examining the chattel-mortgage records Perkins made the loan, understanding that Ewing was to receive the money to satisfy his interest in the corporation so that he might retire from the business and leave the country. A note and mortgage were then made in form to De Pew, dated March 11, 1908, signed by O. B. Walker, as president of the telephone company, which were indorsed and assigned to Perkins, who thereupon paid over the money. His knowledge of the facts connected with this transaction is best shown by quoting from the testimony. He testified:.

"Well, he (Ewing) said that he wanted to get his money out, what he had in there and that he was going to leave the country. That is about all there was to it. That he had sold his interest and was going to get his money out. . . . .

"Q. And you knew that the O. B. Walker Telephone Company was a corporation did you? A. Well, not only that I had heard it was. . . .

"Q. You knew that Ewings and Walker were the principal owners in the Company did you? A. I think that I did. I understood who was the company but I did not understand who was the principal one. . . .

"Q. And you knew that Walker was buying it, whatever interest Mr. Ewings had there. That he had bought it out and that he had given this note and mortgage in payment of it? A. I did not know as he

bought them out altogether, but he said that he (Ewings) wanted to get his money out of there, what Walker owed him. Wanted to get his money.

"Q. And in that conversation he (De Pew) told you that this note was given him for Ewings? A. Yes, sir.

"Q. And that Mr. Ewings was selling out his interest in the Plant to Walker? A. Yes, sir."

De Pew testified:

"Q. You say that you told Mr. Perkins at or about the time these papers were transferred that Ewing was selling? A. Yes, sir.

"Q. Who to? A. He was selling to O. B. Walker.

"Q. O. B. Walker, or Telephone Company. A. Well I do not know, but supposed to be Walker.

"Q. Just tell us exactly what was said? A. I can not tell exactly what was said. I do not know."

After saying that he supposed the Ewing stock was transferred to Walker, his examination proceeded:

"Q. You did not see any transferred? A. No, sir.

"Q. You did not know then whether Walker was buying the stock individually, or whether the corporation was buying it? A. No, sir; I did not know.

"Q. And you did not tell Mr. Perkins whether Walker was buying it or the corporation was buying it? A. I told Mr. Perkins that this note was given to me by Mr. Walker to Mr. Ewing to satisfy Ewing's interest in the plant."

The witness also testified that he told Perkins that O. B. Walker was buying Ewing's interest. Being further asked if he knew to whom the Ewing stock was going, he said:

"If you will allow me to explain, I do not understand corporation business as well as these gentlemen, possibly. I did know that this was to go to satisfy Mr. Ewing's interest, whether it [was] corporation stock, or whatever it may be."

The contention of Perkins is that it must be presumed that the sale was to the telephone company, the note and mortgage appearing to have been issued by that company, and that he had no notice or knowledge

to the contrary. While upon his whole examination it may be claimed that he did not actually know who the real purchaser was, it will be seen that there was evidence from which the court might find that Walker was the purchaser, and that Perkins had knowledge of that fact. The books of the company were not produced, nor was any further evidence given to show who the purchaser was. On the general finding for the bank, it should be presumed, if necessary to uphold the judgment, that the court found that Walker was the purchaser; that the mortgage was without consideration moving to the telephone company, and that Perkins took the mortgage with notice of these facts. If the sale of the interest in the corporation represented by Ewing's stock was to Walker an indebtedness from Walker necessarily arose, and a payment of that debt out of the assets of the company would have been a misappropriation which could have been recovered by the company. (*Hier v. Miller,* 68 Kan. 258, 75 Pac. 77.) A mortgage or pledge of the property of a corporation as security for such individual debt falls under the same principle, since, if enforced, it reaches the same end.

"It is as much beyond the power of the officers or directors of a corporation to pledge its property to secure the personal debt of its president as it is to use it in pledge for the payment of the obligation of a total stranger. In either case the stockholders are equally wronged." (*Cattle Co. v. Loan Co.,* 65 Kan. 359, 361, 69 Pac. 332.)

Section 1742 of the General Statutes of 1909 provides:

"No corporation created under the provisions of this act shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation."

One who receives from an officer of a corporation the securities of the corporation, either in payment or as security for the personal debt of such officer, does so at his peril; *prima facie* the act is unlawful. (*Wilson v. M. E. R. Co.*, 120 N. Y. 145, 150, 24 N. E. 384, 17 Am. St. Rep. 625; *West St. L. Sav. Bk. v. Shawnee, etc. Bk.*, 95 U. S. 557, 559.) The fund here arises from the sale of the property of the corporation and takes its place. The mortgage having been given for the private advantage of Walker, the mortgagee, with notice of that fact, acquired no right to the property. It was, therefore, subject, like other corporate property or funds, to be applied to the payment of debts of that company.

It is not certain that a different result would follow if we should adopt the theory of intervenor Perkins that there is no evidence of a sale of the Ewing interest to Walker, and that it should, therefore, be held that the sale was to the telephone company. The power of a bank to purchase its own stock, except to secure a previously existing debt, was denied in *Savings Bank v. Wulfekuhler*, 19 Kan. 60, reference being made to the statute above quoted. The purchase by a corporation of its own capital stock has been the subject of much judicial consideration, and the decisions are at variance, some holding that such a power exists, in the absence of a statute denying the right, provided the transaction is in good faith, causing no injury to creditors. (10 Cyc. 1109.) Others hold that, in the absence of a statute granting the power, it does not exist. (*Coppin v. Greenlees & Ransom Co.*, 38 Ohio St. 275, 43 Am. Rep. 425.) A collection of authorities upon this question is contained in a note following the opinion in *Hall & Farley, Trustees, v. Henderson*, 126 Ala. 449; 28 South. 531, 61 L. R. A. 621. The general power was denied in that case. It is not necessary, however, to decide in this case whether the authority

exists, nor the circumstances in which it can be drawn in question, since the judgment against Perkins must be sustained for the reasons before stated.

Appellant Perkins insists that it was erroneous to enter a judgment against him before one was rendered against the principal debtor, and cites section 239 of the civil code, which provides that "no trial shall be had of the garnishee action until the plaintiff shall have judgment in the principal action, and if the defendant have judgment (in the principal action) the garnishee action shall be dismissed." This provision was probably intended to save time and expense in trying a collateral proceeding when a failure of the principal action would make such proceeding useless. But the parties may, in this as in other like matters of practice, waive the right to such postponement. The court tried the contested issues between the creditors, the intervenors, and the garnishee, without objection or request for delay, and after due consideration a judgment was entered against the principal defendant and the garnishee at the same time, all parties being represented except the telephone company, which was in default. If the garnishee or the intervenors had any objection to a trial before the formal entry of judgment against the telephone company, they should have presented it. It is further contended by appellant Perkins that a summons had not been served on the telephone company, and therefore the judgment entered against that company is void. This contention rests upon the absence of the summons from the files, and the fact that the appearance docket does not contain an entry of the return. The judgment contains a finding that the telephone company "had been duly and legally served with a summons by personal service upon the pres. O. B. Walker," and that the company is in default. This adjudication can not be held for naught merely because the summons was not found on

file after the judgment had been rendered, and the clerk failed to enter the return upon the appearance docket. This case is easily distinguishable from *Mickel v. Hicks*, 19 Kan. 578, where the recital in a judgment was held to be limited to the notice found on file. Here the summons is not found, and in view of the recital it must be presumed that it was lost or misplaced after the judgment.

It appears that by a proceeding before the judge at chambers the judgment against the telephone company was corrected so as to show that it was, in fact, rendered at a prior date. An objection is made to this proceeding because taken before the judge instead of the court, although the hearing at chambers was with the consent of the party now objecting. It is not necessary to decide this question, however, for the judgment as it appears upon the journal, without the amendment, is sufficient.

The district court found that the Middlekauff mortgage was invalid. If valid, it is prior to the rights of the bank and the other plaintiffs. It was not asserted for any amount beyond that of the balance due upon the original $3600 note, the proceeds of which were received by the telephone company. It is not disputed that this was a valid debt for which a mortgage could have been rightfully given by the company if Walker's individual debt had not been included in it.

It was held in *Rathbone v. Boyd*, 30 Kan. 485, syl. ¶ 2, 2 Pac. 664, that a chattel mortgage purporting to secure in part a valid debt and in part securing advances upon an illegal contract, might be enforced to the extent of the valid debt. In *The State v. Wilson*, 73 Kan. 343, 84 Pac. 737, the Boyd case was reviewed and the syllabus referred to was disapproved. The Wilson case arose upon a mortgage given to secure in part charges made for acts done in violation of a statute punishable by fine. The court distinguished

considerations founded upon such illegal contracts from considerations which are merely insufficient. It was said:

"Where one of two considerations, or a distinct part of one consideration, is for any reason not capable of sustaining a contract, but is not otherwise obnoxious to the law, the courts universally recognize the situation as a partial failure of consideration and permit a *pro tanto* recovery." (p. 351.)

In this case there was nothing illegal in the sale of the stock by Middlekauff to Walker. A valid indebtedness was thereby created against Walker, but not against the company. A note and mortgage by the company to secure it was founded upon an insufficient consideration. It is not invalid because of illegality of consideration, in the sense in which that term is understood in its application to contracts void *in toto* because of this vice, but is invalid for want of a consideration moving to the mortgagor.

Although the mortgage should not be held fraudulent as a matter of law, still if the individual debt of Walker was so included in it with intent to hinder and delay creditors of the telephone company, then it was void for that reason. If there was any evidence tending to prove that it was taken with that intent, the finding of the court that the mortgage is invalid must be sustained. The evidence upon this issue was the testimony of the mortgagee. He testified:

"Q. And those other notes that are here outside of the thirty-six hundred dollars, these fifteen $500 notes were given to you for selling out your own interest to Mr. Walker? A. Over and above the $3600, those notes represented my interest in the plant.

"Q. Now, you took this chattel mortgage to protect yourself against the outstanding creditors at the time, did you not? A. I took it up to secure the payment of this note.

"Q. You knew that there were a good many outstanding debts and that Walker was insolvent? A. Yes, sir; I did. . . .

"Q. And this mortgage was given you to protect you against what claims there were outstanding at the time? A. They were given to secure the payment of these notes.

"Q. Well, you knew that there were other creditors at the time and a good many of them? A. I had heard that there were debts owing.

"Q. Well, you did n't take this mortgage immediately after you heard that Mr. Perkins had put a mortgage on this plant? A. Yes, sir.

"Q. But that was some time subsequent to the taking of the note? A. It was six months after taking the note.

"Q. You did not hear of such a claim as represented by the Perkins mortgage? A. Never had.

"Q. And as soon as you heard that, you took mortgage securing these notes? A. Yes, sir."

It will be observed that Middlekauff asserted no claim upon his mortgage except for the balance due upon the $3600 note, which, in its inception, was a valid obligation of the telephone company. The fact that he knew of other indebtedness of that company when he took the new notes and the mortgage did not preclude him from taking security for this valid claim. Nothing is found in this evidence to sustain a finding that the mortgage was invalid because of an intent to defraud, hinder or delay other creditors of the company. As it was not void, either in law or fact, the conclusion of the district court against the validity of the Middlekauff mortgage can not be sustained.

After the service of the summons on Eby, the garnishee, and before the trial, he paid the fund over to Perkins, taking indemnity therefor. Afterwards, when the garnishee summonses were served upon him in the actions of the Western company and the North company, he answered that he had no funds in his hands. Thereupon Perkins was also garnisheed, and answered denying any liability to the telephone company. Notices that the answers were not satisfactory were filed. Issues were made up and tried with issues

already referred to in the action of the bank, and upon the same evidence. The court found that the Western and the North companies should not participate in the fund, for the reason only that Perkins should be sued direct and could not be held liable in garnishment proceedings. In *Johnson v. Brant,* 38 Kan. 754, 17 Pac. 794, it was held:

"Garnishment proceedings do not lie to enforce preexisting equities or liens in favor of the plaintiff and against the intended garnishee or some third person who may file an interplea in the case, claiming the attached property, money or credits." (Syl. ¶ 1.)

It will be observed that the statutes relative to garnishment have been changed since that decision. (Civ. Code, §§ 229-231, 239.) However, nothing in that case should prevent a recovery by these creditors, if anything is left in the fund after satisfying the Middlekauff mortgage and the judgment of the bank. As already said, the proceeds of the property mortgaged to Eby, after satisfying that mortgage, belonged to the telephone company. In the hands of Eby, they were properly garnisheed as its property. The payment over to Perkins only changed the custody of the fund. It still belonged to the company, in the hands of Perkins, when he in turn was garnisheed. The court, therefore, erred in holding that other actions were necessary to reach it.

It is concluded that the judgments entered in these several cases should be modified by holding the Middlekauff mortgage a valid security for the amount due on the original $3600 indebtedness of the telephone company, and directing that the fund in the hands of the garnishees be paid into court, and applied, first, to the payment of the balance found due upon the original debt of $3600, secured by that mortgage; second, to the payment of the judgment of the bank; third, to the payment of the amount due the Western company; fourth, to the payment of the amount found

due to the North company. As the amount of the indebtedness to Middlekauff, for which his mortgage is now held to be a valid security, was not found by the district court, such a finding should be made upon the evidence already heard, or upon further evidence, as that court may direct. If it is found that nothing will be left in the fund after satisfying the Middlekauff mortgage, or that mortgage and the amount found due the bank, the garnishment proceedings of the Western and the North companies should be dismissed.

The several causes are remanded to the district court with directions to modify the judgments in accordance with the views expressed in this opinion.