## KEYES v. SECURITY STATE BANK OF STRASBURG, N. D.

(Circuit Court of Appeals, Eighth Circuit. August 11, 1924.)

No. 6529.

1. **Appeal and error ⬅997(3)—Finding of court in directed verdict asked by both parties has effect of verdict of jury.**

Where both parties move for directed verdict, and court grants motion of one, its finding has effect of verdict of jury.

2. **Banks and banking ⬅227(1)—Burden on plaintiff bank to prove note executed by its president was his personal obligation.**

Where president of plaintiff bank executed note payable to defendant bank, which was sent to defendant and credited to plaintiff, and later returned to plaintiff for collection and credited to defendant, it was necessary part of plaintiff's case, in action to recover amount so credited to defendant, to prove note was in fact personal note of its president.

3. **Banks and banking ⬅97—Delivery of note of president of plaintiff not personal transaction.**

Where proceeds of note executed by president of plaintiff bank and sent to defendant bank were sent to plaintiff and used by it, the transaction was not a personal one, so as to render payment of the note out of plaintiff's funds improper.

4. **Estoppel ⬅83(1)—Bank held estopped to deny note executed by its president and sent to it for collection was not collected.**

Where note executed by president of plaintiff bank was sent to defendant bank in ordinary course, and thereafter was sent to plaintiff bank for collection, and notice was given to defendant that it was collected, signed by plaintiff's cashier, and monthly reconcilement sheet treated it as collected, plaintiff was estopped to deny collection was in fact made, or from claiming wrongful payment from bank funds.

5. **Banks and banking ⬅99—Bank receiving proceeds of note executed by its president could not claim guaranty ultra vires.**

Bank, which received proceeds of note executed by its president, could not thereafter allege its oral guaranty of such note was ultra vires.

In Error to the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Action by Paul C. Keyes, receiver of the First National Bank of Eureka, S. D., against the Security State Bank of Strasburg, N. D. Judgment for defendant, and plaintiff brings error. Affirmed.

James M. Brown, of Aberdeen, S. D. (E. T. Burke, of Bismarck, N. D., on the brief), for plaintiff in error.

R. A. Dunham, of Clark, S. D., for defendant in error.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

KENYON, Circuit Judge. The facts giving rise to this controversy briefly are as follows: Christian Vorlander was president of the First National Bank of Eureka, S. D. On January 6, 1920, he executed a note for 60 days in the sum of $5,000, payable to defendant in error, Security State Bank of Strasburg, N. D. The First National Bank of Eureka forwarded this note to the Security State Bank of Strasburg, and the same was received January 8, 1920. On the date the note was transmitted by the First National Bank of Eureka (here-

inafter called the Eureka Bank) to the Security State Bank of Strasburg (hereinafter designated the Strasburg Bank) the Eureka Bank entered a credit in the sum of $5,000 to its "loans and discounts" account, and debited its "transit" account with the same amount. On January 9th the Eureka Bank received from the Strasburg Bank a draft for $5,000, drawn on the Security Bank of Minneapolis, which the Eureka Bank forwarded to said Minneapolis Bank for credit. The Eureka Bank credited its transit account with $5,000, and debited the Minneapolis Bank with the same sum. The Eureka Bank in due course of its business thereafter, by drafts drawn on the Minneapolis Bank, drew out the entire $5,000. The transit account of the Eureka Bank was to cover items while in transit, and was a mere matter of convenient bookkeeping.

On the 5th day of March, 1920, the Strasburg Bank forwarded the Vorlander note to the Eureka Bank for collection and credit, and on March 6th the Strasburg Bank charged the Eureka Bank on its books with $5,067.67. At that time Vorlander had a credit on the books of the Eureka Bank in excess of this charge. The Eureka Bank mailed to the Strasburg Bank a communication, signed by its cashier, Sprick, stating that the Eureka Bank credited the Strasburg Bank with $10,-210.12, covering the items in the communication of the Strasburg Bank to the Eureka Bank of March 5, 1920. Later the Eureka Bank mailed to the Strasburg Bank what is designated as a reconcilement sheet for the month of March, 1920. It covered the business done with the Strasburg Bank during the month of March, 1920, and was the customary way between the banks of reconciling differences between their books. That this reconcilement sheet correctly stated the condition of accounts between the banks is testified to by Mr. Pufahl, who was assistant cashier, later a vice president, and then cashier, of the Eureka Bank. At the date of the entry of the debit against Vorlander's personal account on the books of the Eureka Bank he was in fact indebted to the bank in a large sum, and the credits existing on the books were false. This was not known, apparently, to any one except Vorlander. He was in entire management of the bank, and manipulating its affairs for his personal gain. The final result was his suicide and the passing of the bank into the hands of a receiver.

[1] At the close of all the evidence both parties moved for a directed verdict. The court sustained the motion of defendant in error, the Strasburg Bank, and entered judgment in its favor. Under this situation the finding of the court has the effect of a verdict of a jury. A number of assignments of error are presented, the consideration of two of which is determinative of the case. These are assignments of error No. 3 and No. 4 as follows:

"III. It was error of the trial court to hold as a matter of fact that the note in suit was not the personal note of Christian Vorlander, but the note of the Eureka Bank, of which he was president.

"IV. It was error of the trial court to hold in deciding the case that the directors of the Eureka Bank were negligent in permitting Vorlander to use the funds of the said bank in payment of his personal obligations, and as a matter of law holding that this estopped this plaintiff in this action."

The theory of plaintiff in error is that the Strasburg Bank purchased the personal note of Vorlander, and then charged it to the Eureka Bank's account without any authority from said Eureka Bank; in other words, that Vorlander obtained $5,000 from the Strasburg Bank, and that the same was paid out of the Eureka Bank's funds without authority. On the other hand, defendant in error's theory is that the debt represented by the note in question was in fact the debt of the Eureka Bank, and not of Vorlander personally; that if it was the personal note of Vorlander, and, if paid with Eureka Bank funds, the record fails to show any knowledge on the part of the Strasburg Bank or any of its officers that the funds used to pay the obligation were those of the Eureka Bank, and that there is nothing in the record to in any way put the Strasburg Bank on notice that funds were so used; that the Eureka Bank, through Vorlander, guaranteed the payment of the note, and that, as the money was received by the Eureka Bank, its funds could properly be used to pay the same; further that the Eureka Bank is estopped to deny the collection of the Vorlander note by virtue of a statement from it to the Strasburg Bank with reference thereto, and the reconcilement sheet for March, 1920.

[2] The court, in passing on the motion to instruct the verdict, said that in its opinion the plaintiff had not proven that the note in suit was the personal note of Christian Vorlander, but was in fact the note of the bank. It may be suggested that this was pleaded as a defense by defendant in error and was claimed in the trial to be inconsistent with the other defense pleaded, viz. that the Strasburg Bank had an agreement with the Eureka Bank by virtue of which the Eureka Bank would send all the paper it chose to them under a guaranty of payment. Defendant in error elected to stand upon the defense of an express agreement entered into between the Eureka Bank and the Strasburg Bank, guaranteeing this note and other similar notes sent by one bank to the other. While the defense that the note was in fact the note of the bank, and not the personal note of Vorlander, was eliminated by such election, nevertheless it was a necessary part of plaintiff in error's case to prove that the note was in fact the personal note of Vorlander.

[3] The transaction was not a personal one, even though the note was signed by Vorlander. It was clearly a transaction between the banks, carried on in the way the business of the Eureka Bank was customarily conducted where loans were made for its benefit. The business of the bank seems to have been entirely in the hands of Vorlander. The directors who testified knew little or nothing of the bank's affairs. They were seemingly mere dummies, acting under the direction of Vorlander. Whatever he did was apparently acquiesced in by the directors. The money borrowed on the Vorlander note was for the benefit of the bank. It was received by it in a draft from the Strasburg Bank, and, as we have heretofore indicated, was sent to the bank's correspondent at Minneapolis, and the proceeds placed to the credit of the Eureka Bank, and later drawn out on its drafts.

It may be true, as suggested, that Vorlander had theretofore abstracted sums from the bank greatly in excess of the $5,000 received

from the Strasburg Bank; but even then the Eureka Bank was benefited by the receipt of this $5,000, though the amount may have taken the place in part of what Vorlander owed the bank by reason of his defalcations. Our opinion coincides with that expressed by the court that the evidence fails to show that the transaction involving the Vorlander note was a personal one. It was in fact a bank transaction.

[4] While this conclusion is determinative of the case, we may say as to the theory of plaintiff in error that the note was not the obligation of the Eureka Bank and was not accepted by the Strasburg Bank as such, but as the individual note of Vorlander, and that the Eureka Bank received no benefit whatever from this transaction, and that the same was paid from its funds, that we think it is estopped from claiming that collection of Vorlander's note was not in fact made, or from claiming that it was wrongfully paid with bank funds. The note was sent by the Strasburg Bank to the Eureka Bank for collection and remittance. While the Strasburg Bank entered a charge against the Eureka Bank on its books, the record shows that the Eureka Bank had no funds on .deposit with the Strasburg Bank at that time, but was indebted to it in the sum of $6,779.42. Hence no funds of the Eureka Bank were appropriated. The Strasburg Bank, when it received notice from the Eureka Bank that the Vorlander note had been collected, was not put upon any notice that funds of the Eureka Bank had been used wrongfully to pay said note. It was not compelled to make an examination of the Eureka Bank's books to ascertain whether money had been wrongfully used to liquidate the note. The statement that the note had been collected was not signed by Vorlander, but by another officer of the bank. The reconcilement sheet for the month of March was likewise a representation by the Eureka Bank, made in due course of business, either that it had collected Vorlander's note, or that he was authorized to use bank funds for its payment. It is not contended that the reconcilement sheet was not the act of the bank. The record shows this was the usual and regular course of business between the banks, and the directors of the Eureka Bank had notice through the reconcilement sheets of the items therein contained. The Strasburg Bank had the right to rely on these representations that the note had been collected. Evidently it did so clearly to its prejudice, as otherwise it is reasonable to presume it would have made some effort to collect the note.

[5] Defendant in error claimed that, if the Vorlander note was in fact a personal note, it was guaranteed by the Eureka Bank, and that bank funds could properly be used to pay it. Plaintiff in error contends that it was a personal note of Vorlander, sold to the Strasburg Bank by the Eureka Bank under an oral guaranty by the bank of payment, and that such guaranty was ultra vires. Under this theory, as the Eureka Bank received the $5,000 from the Strasburg Bank on the strength of the guaranty and used it for its own purposes, even were the guaranty ultra vires, the Eureka Bank was not in position to raise the question, under the doctrine of Citizens' National Bank v. Appelton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443. Here, as there, it would be against good conscience for the bank to retain the money which it had received as the result of the guaranty,

and then claim the guaranty to be ultra vires. See, also, Kissam v. Anderson, 145 U. S. 435, 12 Sup. Ct. 960, 36 L. Ed. 765; Burton, Receiver, v. Burley, Receiver (C. C.) 13 Fed. 811; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611.

Whether the note in question be regarded as a personal one of Vorlander, or in fact as a note of the bank, there could be no recovery under any theory presented in the record, for the reasons we have herein suggested in the discussion of both theories of the transaction. It is apparent that the conclusion of the trial court was correct, and its judgment is affirmed.