No. 29,035.

E. J. DEMPSTER, as Receiver of the State Bank of Superior, Nebraska, *Appellant*, v. M. W. DOUTHITT, *Appellee*.

(286 Pac. 211.)

Opinion filed April 5, 1930.

*R. W. Turner, Donald Stanley,* both of Mankato, and *Thomas J. Keenan,* of Geneva, Neb., for the appellant.

*D. M. McCarthy,* of Mankato, and *Bernard McNeny,* of Red Cloud, Neb., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the receiver of the State Bank of Superior, Nebraska, in the district court of Jewell county, Kansas, against one of its former depositors for $5,608.50, which plaintiff claims was improperly placed to the credit of the defendant on his deposit account by the officers of the bank on December 6, 1926, and had been used and checked out by defendant, except $101.42, when the bank failed on April 28, 1927. The answer was in effect a general denial except admitting the credit to his account. The case was tried to a jury which returned a verdict for the defendant, and from the judgment thereon in favor of the defendant the plaintiff appeals.

Error is assigned in overruling appellant's motion for judgment

on the pleadings and opening statements, in excluding exhibit No. 6, in giving certain instructions to the jury and in overruling plaintiff's request for a directed verdict and its motion for a new trial.

While the above statement briefly presents the question brought here on appeal, it does not give a satisfactory or necessary view of the case as it was presented and tried in the court below. To avoid confusion let us for the purpose of this statement disregard what is described as a cash item of $108.50, which is not vitally important and not well explained or connected with the other transactions mentioned in the petition and evidence, and we will refer to the claim as being even money, $5,500.

The petition recites in great detail a series of irregular transactions by the president and cashier of the bank commencing back more than a year before the failure of the bank, wherein they kept a firm account in the name of Weir & Aldrich, and on April 30, 1926, when three separate notes of customers were paid, amounting to $5,500, instead of sending the money to the Tootle-Lacey National Bank, which held them on rediscount, new notes were supplied with different numbers in the files and on the books, and the $5,500 placed to the credit of the firm of Weir & Aldrich. On August 18, 1926, the defendant had on deposit in his checking account in the bank more than $6,000, and the president and cashier transferred $5,500 of it to their firm account, placing a debit slip in the records showing the transaction. On the 6th of December, 1926, the president and cashier reimbursed the defendant's account by the return of the $5,500, placing it to his credit, making a deposit slip of it, and it is alleged that this credit of $5,500 appeared on the adding-machine list given to defendant with his pass book and checks in January, 1927.

The following paragraphs from the petition will complete the history of the case and show the theory of the plaintiff at the time the petition was filed:

"That on said date Joseph E. Weir and George S. Aldrich with the consent of the defendant borrowed of him and took from his said general account said sum of $5,500, evidencing the withdrawal thereof by placing a debit slip in the records of said account in said bank. . . .

"That plaintiff charges that the taking of said sum of $5,500 of the money of the defendant by said Joseph E. Weir and George S. Aldrich constituted a loan to them by defendant at the interest rate of 7 per cent per annum, and which said money was borrowed by said Joseph E. Weir and George S. Aldrich for the purpose of taking up and reimbursing said the State Bank

of Superior for the aforesaid three notes of Headrick, Bargen and Green, after they, said Joseph E. Weir and George S. Aldrich, had wrongfully diverted and converted the money paid by the makers of said notes as hereinbefore recited. . . .

"That plaintiff further charges that prior to said 18th day of August, 1926, the defendant had permitted said Joseph E. Weir and George S. Aldrich to borrow various sums of money from his general checking account. . . .

"That on said 6th day of December, 1926, said Joseph E. Weir and George S. Aldrich wrongfully and without right or authority so to do appropriated and converted the cash and money of said the State Bank of Superior in the sum of $5,608.50 to their own individual use and benefit and the use and benefit of the defendant as hereinafter shown without payment by them or reception by said bank of any benefit or consideration whatsoever and without record except the placing by said Joseph E. Weir and George S. Aldrich of a certain debit slip in the records of said bank. . . .

"That the aforesaid money of said the State Bank of Superior wrongfully converted by said Joseph E. Weir and George S. Aldrich was by them paid to and to the use and benefit of the defendant, with his knowledge and consent."

The record shows that the plaintiff substantially followed the petition in making his opening statement, and that the opening statement of the defendant was in part as follows:

"Now if the officers of that bank misappropriated their depositors' money, as the statement indicates here, we contend that the defendant, Mr. Douthitt, is in no way responsible for it, because he knew nothing about it, and that all Douthitt did, as any customer of the bank would do, he put his money in there and checked it out, and he doesn't owe them a dollar."

On March 12, 1928, the attorneys for the receiver wrote the defendant the following letter:

"We write you in behalf of E. J. Dempster, receiver of the failed State Bank of Superior, Nebraska. On August 18, 1926, it appears that you loaned Messrs. Weir & Aldrich the sum of $5,500. That you received on December 6, 1926, the sum of $5,608.50, which was taken from the funds of the bank. This was the individual debt of Weir & Aldrich, to you, and you were charged with the duty of seeing that they would not pay it out of the funds of the bank. Since it was returned out of the funds of the bank, you are liable for the repayment of the same to the bank. In the event of your failure to repay the sum of $5,608.50 together with interest at 7 per cent from and after December 6, 1926, we will be obliged to commence suit against you for the same. Please let us hear from you."

The assignment of error in overruling appellant's motion for judgment on the pleadings and the opening statements can be easily disposed of when we observe the nature and character of the cause of action stated in the petition. It unmistakably states a cause of action based upon the improper return of the sum of $5,500 to the

account of the defendant from the funds of the bank, which sum the defendant a few months before had definitely loaned to the president and cashier of the bank personally, and with full knowledge had permitted them to withdraw this amount from his checking account. The answer denies all of this except the return of the $5,500, and thereby raised many issues of fact, and the opening statements following the pleadings did not eliminate any of those issues.

It appears that the trial court was not favored with the testimony of the two witnesses who necessarily and naturally knew more than all others about this transaction. The only witness produced by the plaintiff was the special agent in active charge of the failed bank under the receiver. He produced books and papers belonging to or found in the bank, and testified from them and as to the handwriting of the officers, and explained some of the entries. On cross-examination he said:

"In many instances Weir & Aldrich took money from depositors and put it into their own account, without authority from the depositors."

He explained that he had been unable to find any checks or debit slips of the defendant in the bank, and that after the bank closed he saw the defendant bring to the bank and hand to Hogland, a special officer then assisting the receiver, his pass book and checks together with an adding-machine list of checks which included the $5,500 item of August 18, 1926. The witness in great detail gave the matters shown by the bank records as to the $5,500 paid by the three customers on their separate notes, and traced it to the account of the officers' firm; later he showed the withdrawal of that amount from defendant's account and the payment that same day of this amount to the holder of the three original notes, and then showed the later reimbursement of the account of the defendant.

The defendant testified in part as follows:

"That he was engaged in the live-stock business and had been a customer of the State Bank of Superior for many years. That he had never authorized either Weir or Aldrich to take any money from his account and he had never heard of their doing so until after the bank closed. After the bank closed the witness gave his bank book to Hogland and has never seen it since. . . . That he delivered to Hogland his pass book and other papers, including checks and notes and an adding-machine statement of the charges made against his account. The witness did not remember any charge of $5,500."

The appellant argues that since the receiver entirely failed to establish any of the allegations as to the making of a loan by the

defendant to the officers of the bank or his permitting them to withdraw money from his account, that such matters should be considered as collateral—preliminary history, as it were, and only for the purpose of leading up to the vital point of final reimbursement of the appellee on December 6, which would in and of itself be an enrichment of the defendant to that extent out of the funds of the bank, and entitle the receiver to recover the same. This is the case as it was stated in the first paragraph of this opinion as embodying the present theory of the appellant.

If the appellant had filed his petition starting with the act of December 6, 1926, alleging an improper enrichment of the defendant, the answer would certainly have supplied that allegation of the prior depletion of the defendant's account. In a court of review the pleadings are not usually amended nor allegations eliminated therefrom. Even if amended during the trial, the original may be introduced in evidence. So the whole story is here as it was before the jury and the trial court. The skill with which the petition was drawn does not suggest that the draftsman needlessly and thoughtlessly included the several strong and forceful allegations about the defendant making a loan to the president and cashier, and permitting them to withdraw this large amount from his checking account for their personal benefit.

If the appellant should desire to forget the preliminary history and begin with December 6, the court in the interest of common justice and good conscience would want to know what became of the $5,500 that was in defendant's account on August 18. The defendant was not on that date carrying a deposit with the president and cashier of the bank, but with the bank. What did the bank do with the deposit intrusted to its care? If it had remained solvent would any court have sustained its claim on one side when it ignored its responsibility on the other?

The receiver is here representing the bank, its depositors and creditors.

Appellant cites many cases showing that an officer of a bank cannot give away the funds of the bank nor use them to pay his individual debts, and if he does the bank can recover them from the party to whom they are given. In the case of *Cobe v. Coughlin*, 83 Kan. 522, 112 Pac. 115, the officers permitted a creditor of a stockholder to check on the bank to the amount of the debt of the stock-

holder to him without anyone making a deposit in the bank to justify the same.

In the case of *Hier v. Miller*, 68 Kan. 258, 75 Pac. 77, the cashier entered in the pass book of his creditor a credit to the amount of his individual indebtedness and allowed the creditor to check it out of the bank, and the creditor was required to return it to the bank because the giving of credit in the bank book for the individual indebtedness of the cashier was sufficient to put him on his inquiry.

The case of *State Bank v. Richardson*, 117 Kan. 695, 232 Pac. 1070, was where the managing officer of the bank gave an executed deposit slip for his individual debt and the creditor had reason to know that the bank should not pay the officer's debt.

A statement in *Bank v. Telephone Co.*, 88 Kan. 287, 128 Pac. 357, cited by appellant covers the question here involved at page 294.

"One who receives from an officer of a corporation the securities of the corporation, either in payment or as security for the personal debt of such officer, does so at his peril; *prima facie* the act is unlawful."

Other citations are to the same effect, but they all hark back to the fact that the party benefited knew, or ought to have known, that he was dealing with an officer and not with the bank. That takes us back to the petition again—well drawn. It is all in there, fully stated and developed, but without any testimony to support it as to the knowledge of the defendant.

Appellant cites 41 C. J. 59, under the heading of "Money received," and the following paragraph therein we think correctly states the rule about recovering back money received:

"As a defense to the action defendant may and ordinarily must show such facts as will entitle him to retain the money on either equitable or legal grounds. The main principle by which to test the matter is whether in equity and good conscience, in view of the special facts of the case, defendant is entitled to retain the money as against plaintiff, not necessarily whether he has an absolute right to the money as against any person, but whether his right thereto is equal to plaintiff's right."

Great stress is placed on the fact that the adding-machine list in the pass book given to the defendant shortly before the bank closed should have put the defendant upon inquiry, and that it was his duty to have examined it when it was given him, but his neglect to do so promptly will not put him upon inquiry, and his testimony

is that he did not remember seeing this item and did not know of it until after the bank closed.

The motion for a directed verdict for plaintiff was properly overruled because there was no testimony of the making of a loan to the officers, or the withdrawing of the funds from defendant's account with his knowledge or permission, but evidence to the contrary; and the evidence of notice to put defendant upon inquiry was not in itself conclusive.

Appellant insists that it was error for the court to exclude exhibit No. 6, which was a debit slip showing an earlier withdrawal of $9,500 from the defendant's checking account by the same bank officers, which was placed in their firm account and returned in about three weeks. The record shows nothing in the way of bringing this transaction to the knowledge of the defendant and nothing to put him upon inquiry. Without some evidence along these lines, the exhibit was properly excluded.

Appellant complains of the instructions given, in that they make the knowledge of the defendant of the wrongful acts of the officers a required factor in the appellant's case, in that the jury was permitted to consider as an open question whether the officers of the bank wrongfully appropriated bank money, and in that the jury was authorized to consider the question of the defendant making a loan to the officers and the withdrawal of his deposits in connection with the wrongful reimbursement.

The instructions of the court were necessarily based upon the evidence as well as the pleadings, and the absence of proof on an essential element of the plaintiff's cause of action will not withdraw that feature of the case from the consideration of the jury, especially when the evidence of the defense was directly and positively to the contrary. We find no error in the giving of the instructions or the overruling of the motion for a new trial.

The judgment is affirmed.