# AGRICULTURAL CREDIT CORPORATION v. SCANDIA AMERICAN BANK OF CROOKSTON, BY A. J. VEIGEL.[1]

July 24, 1931.

No. 28,407.

[1]Reported in 237 N. W. 823.

*Boutelle, Bowen & Flanagan,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *Tracy J. Peycke,* for respondent.

HILTON, J.

The Scandia American Bank of Crookston, a Minnesota corporation, was closed by the Minnesota commissioner of banks on August 13, 1927, who has ever since been and is now engaged in its liquidation. Plaintiff is a Delaware corporation engaged principally in the business of loaning money to banks in the northwest and with its principal place of business in Minneapolis, Minnesota. The bank was desirous of borrowing money from plaintiff for the purpose of replenishing its reserves and for other corporate purposes. On or about June 24, 1924, its board of directors properly adopted a resolution, by the terms of which the officers of the bank were authorized to borrow from plaintiff such amounts as plaintiff might be willing to loan it and to secure such sums by a pledge of the assets of the bank.

The resolution further authorized the officers of the bank to take loans from time to time from plaintiff and to execute notes and

obligations of the bank therefor, and also authorized the transfer of any real estate owned by the bank to a corporation known as the Crookston Realty Company for the express purpose. of permitting such realty company to mortgage such lands to plaintiff as security for loans made by plaintiff for the use and benefit of the bank. Said resolution also authorized the realty company to borrow money from plaintiff for the use and benefit of the bank and to issue its own paper therefor. One Conger was president and managing officer of both the bank and the realty company. The same management controlled both concerns.

Pursuant to the resolution and other proper authority, the bank on or about June 26, 1924, by warranty deed conveyed to the realty company some of its real estate for the purpose of permitting the realty company to mortgage the same as security to the plaintiff for money to be borrowed from plaintiff for the use and benefit of the bank. On June 30, 1924, the realty company made, executed, and delivered to plaintiff its promissory note in the sum of $50,000 and on said date made, executed, and delivered to plaintiff a mortgage covering the real estate referred to. Thereupon plaintiff upon the express direction of the realty company paid over and loaned to the bank the sum of $50,000, which sum was received and used by it for its own benefit.

On June 30, 1924, the realty company by warranty deed conveyed said real estate to the bank, and by the terms of said deed it was provided that said bank should and said bank did assume and agree to pay said mortgage.

On June 22, 1927, the bank by its warranty deed conveyed to the realty company a portion of the real estate above referred to, and by the terms of said deed the realty company assumed and agreed to pay the mortgage dated June 30, 1924. Plaintiff had no knowledge or notice until on or about May 1, 1930, of the terms of said deed or of the provision therein whereby the realty company assumed and agreed to pay said mortgage. During the month of September, 1928, plaintiff took from said realty company a renewal note and extended the time of payment of the balance then remaining upon the indebtedness above referred to for a further period of

three years, such extension being without the knowledge or consent of defendant commissioner of banks.

From time to time the bank made payments to plaintiff on account of principal and interest on said indebtedness and, upon the maturity of the note and the renewals thereof, procured the realty company to execute and deliver to plaintiff renewals thereof, and on July 2, 1927, procured the realty company to execute and deliver to plaintiff a renewal note evidencing the balance of said indebtedness in the sum of $33,156, said note being payable on or before December 1, 1928; that there was then due and owing from said bank to plaintiff said sum.

On or about October 3, 1927, plaintiff presented its claim to the commissioner of banks covering the indebtedness referred to, asking for its allowance as a claim. Plaintiff therein expressly stated that it did not waive any right to the security pledged to it to secure the claim. On January 11, 1929, the commissioner disallowed the claim and has not paid plaintiff any part of the claim. The foregoing constitutes in substance the findings of fact.

As conclusions of law drawn therefrom the court found: (1) That the bank was indebted to plaintiff in the sum of $33,388.09 because of the principal amount of $33,156 and interest up to the date of the closing of the bank; (2) that the claim was duly filed by plaintiff; (3) that neither the bank nor the commissioner has been discharged or released in any manner from such indebtedness or obligation; (4) that plaintiff is not estopped to assert and have allowed said claim. Judgment was ordered allowing plaintiff's claim in the sum of $33,388.09.

Defendants moved for certain amended findings of fact and conclusions of law. The motion was denied. Defendants appeal from the order denying their motion for a new trial.

Considering the view taken by the trial court of the evidentiary facts, its findings of fact were amply supported by the evidence and must stand; amended findings were properly denied. As shown by exhibit A (the resolution of the board of directors of the bank attached to the complaint) and defendants' exhibit 7 (the resolution adopted by the board of directors of the realty company) as

well as by other documentary and oral evidence, the loan was a loan to the bank; the money was received therefrom and used by the bank. The realty company was only an agency used by the bank for its own purposes, to hold the title to the land and execute the necessary instruments to secure the loan. Plaintiff so understood it.

■ Defendants' contention that under the complaint and the facts the bank is not liable upon the mortgage or for payment of the loan cannot be sustained. The contrary is true. The case of First Nat. Bank v. Thorpe Brothers, 179 Minn. 574, 229 N. W. 871, largely relied upon by defendants, is clearly distinguishable on the facts from this case. That case turned upon a finding of fact by the trial court supported by the evidence that by the terms of a contract fully performed and satisfied defendants had no obligation to pay notes and a second mortgage given by another person to plaintiff; plaintiff had relied upon the land and notes for its sole security. In the Thorpe case plaintiff contended that because defendants received the land conveyed there was an implied obligation to pay therefor. The parties had expressly agreed to the contrary. In the case at bar there was no express contract of any such nature made between plaintiff and the bank. Nothing indicated anything inconsistent with the bank's liability. The manner of conducting the entire transaction and the actions of the parties throughout indicated that the purpose of all concerned was that the bank was obligated for the loan and should pay it. It made substantial payments thereon. Here there was no finding that plaintiff relied upon the mortgage and notes given by the realty company as its sole security. A reading of the Thorpe case clearly shows that it is distinguishable from this one.

■ Defendants contend that plaintiff is estopped from asserting any liability against the bank. The findings of fact furnish no basis for an estoppel, nor would the requested amended findings of fact if found so furnish. The objection is made to the conclusion of law that plaintiff was not estopped. That conclusion under the facts found was proper. Estoppel must be based upon facts. If

there were facts requiring the finding of an estoppel, which there were not, an application should have been made to the trial court to find them. It is too late now to assert them. Pittsburgh P. G. Co. v. Brown, 152 Minn. 325, 188 N. W. 569.

A claim of estoppel cannot be successfully asserted unless it appears that the party asserting it or someone for whom he is acting has been misled to his disadvantage. The evidence was silent as to the bank or any of the creditors having been in any way prejudiced, nor is there any evidence to charge plaintiff with any responsibility for anything upon which an estoppel can be predicated. Plaintiff paid the money to the bank; its cash assets were increased by $50,000. Plaintiff had nothing to do with the reports that were made to the commissioner of banks nor as to how the bank should keep its books. If wrong existed in either or both it was not plaintiff's concern. It is further to be noted that no issue was raised by the pleadings as to the improper manner in which the bank officials did either. Defendants cite German-Am. F. Corp. v. Merchants & M. State Bank, 177 Minn. 529, 225 N. W. 891, 64 A. L. R. 582. It is not in point here. In that case plaintiff permitted its note to be in the files and among the assets of the bank under a secret agreement that it was not to be considered a subsisting obligation. Certain collateral deposited with the bank as security for obligations was by secret agreement to be released upon payment of a portion only of the indebtedness. The court with evidence to support it found that an estoppel existed. Facts giving rise to an estoppel must be clearly proved. 2 Dunnell, Minn. Dig. (2 ed.) § 3215. Just how, if at all, creditors here were injured or prejudiced does not appear in the evidence. No estoppel existed.

See generally Kendrick State Bank v. First Nat. Bank (C. C. A.) 213 F. 610; Bon Homme County Bank v. Dakota Nat. Bank, 50 S. D. 191, 208 N. W. 825; Hanover Nat. Bank v. First Nat. Bank (C. C. A.) 109 F. 421; Leonard v. State Exchange Bank (C. C. A.) 236 F. 316; Johnson v. Peoples Nat. Bank, 130 Kan. 379, 286 P. 214; American Exch. Nat. Bank v. First Nat. Bank (C. C. A.) 82

F. 961; Keyes v. First Nat. Bank (C. C. A.) 25 F. (2d) 684; Keyes v. Security State Bank (C. C. A.) 300 F. 897; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. ed. 611; Cherry v. City Nat. Bank (C. C. A.) 144 F. 587; Jensen v. Sawyer State Bank, 44 N. D. 225, 173 N. W. 162.

■ Defendants further claim that when the bank conveyed one of the tracts covered by the mortgage to the realty company in June, 1927, whatever the liability of the bank may have been before, it then became as between it and the realty company a surety and that the extension by plaintiff of the time of payment in September, 1928, operated as a release of the bank. This contention is not tenable. The realty company was liable upon the $50,000 note and the bank upon its obligation to repay the money it had received as a loan. The bank was at all times primarily liable for the money borrowed, and that relationship continued. Whatever transpired after the commissioner closed the bank did not affect the situation, irrespective of the fact that plaintiff did not know that the bank had assumed and agreed to pay the mortgage in the conveyance made to it by the realty company.

■ The rights of the parties to this transaction became fixed at the time of the closing of the bank and were not affected by later transactions. 1 Clark, Receivers (2 ed.) 915; 2 Tardy's Smith, Receivers (2 ed.) 1660; American Surety Co. v. Finletter (C. C. A.) 274 F. 152; 53 C. J. 105. The amount of the claim as of the date of the closing of the bank should have been allowed by the commissioner. The trial court, as noted, allowed plaintiff's claim as it stood at the time the bank closed, in the amount of $33,156, and interest thereon. This was correct. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 362, 43 L. ed. 640. Since the bank closed the plaintiff has collected on collateral held by it over $2,000, leaving a balance of $30,300.95 unpaid on its claim at the time of the trial. Plaintiff holds a valuable real estate mortgage as security for its claim and some other collateral. Its securities are probably worth approximately the amount of its claim. These securities it proposes to retain and collect. When or how

plaintiff intends to realize on its securities and collateral does not appear. The rule followed by the trial court in the Merrill case, 173 U. S. 136, was stated as follows:

"The creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall not receive more than the full amount due him."

The Supreme Court in its decision stated the proviso in this rule in slightly different words, as follows [173 U. S. 135]: "subject always to the proviso that dividends must cease when from them and from collaterals realized, the claim has been paid in full."

In speaking further on the subject the Supreme Court holds that the secured creditor, while entitled to dividends on his full claim as it stood at the time of the taking over of the assets by the receiver, such creditor cannot go beyond payment; and surplus assets, or so much of his dividends as are unnecessary to pay him, must be applied to the benefit of other creditors.

The difficulty arises in determining when and how to determine and apply the securities and collateral held by the secured creditor, so as to ascertain when, if at all, no further dividends shall be paid to him. It is suggested in the case cited that the receiver may redeem the collateral or securities held by the secured creditor or may be subrogated, as circumstances may require. It is held in that case that the secured creditor cannot be charged with the estimated value of his collateral or be compelled to exhaust it before enforcing his direct remedies against the debtor.

It is clear that if the receiver has sufficient funds he may redeem the securities or collateral held by the secured creditor by paying the amount then due such creditor, and that such creditor must then surrender to the receiver for the benefit of other creditors all securities and collateral so held. Is this the only remedy? In many cases the receiver is not in a position to redeem, either for lack of funds or from other complications and circumstances that may arise. The secured creditor may stand by until the end of the

receivership, receive a large portion of his claim in dividends, and thereafter reap a substantial profit from conversion or sale of his collateral. True, the creditor would not be entitled to retain the profit, but if the receiver is discharged, the corporation he represented is dissolved, and the unpaid creditors are the only ones in any position to call the secured creditor to account. From a practical standpoint such remedies do not promote speedy or efficient justice and tend to cause unnecessary expense and multiplicity of suits. There should be some equitable method by which the final rights of the secured creditor can be and are ultimately determined in the receivership proceeding. But we are not called upon to determine these rights in the present case. There are no findings covering the question and no such issues presented by defendants' answer or litigated at the trial.

■ The granting of or refusal to grant the motion to amend the complaint rested largely in the discretion of the trial court. There was no abuse of discretion in permitting plaintiff at the commencement of the trial to amend it by including therein an allegation that the deed from the realty company to the bank provided that the bank should assume the mortgage and that the bank did assume and agree to pay it. That such was the case appears in the findings of fact. Defendants were in no way injured or prejudiced thereby.

■ There were no errors in the rulings on the admission of evidence. From a careful examination of the entire record and from a consideration of the briefs and able oral arguments, we are convinced that the result reached by the trial court was correct.

Affirmed.

LORING, J. took no part.